Carpenter v. Falter.

## Benjamin Carpenter

### v.

## Peter Falter et al.

1. Contract for building—Rights of sub-contractors.—Appellants employed C. to erect for him certain buildings, for which he was to pay one-half cash and one-half in land. For the land payment a deed was executed and left *in escrow*, to be delivered on completion of the buildings according to contract. *Held*, that the deposit of the deed *in escrow* was to be considered as a reservation, on the part of appellant, of a lien to secure the faithful performance by C. of the terms of his contract, and protect appellant against the claims of sub-contractors under C.; that the contract between appellant and C. being in writing, and the sub-contractors being chargeable with full knowledge of its terms, they cannot be heard to claim that they acted on the faith of oral statements made by appellant different from what the written contract imports.

2. Estoppel in pais.—To create an estoppel *in pais*, the party against whom the estoppel is sought to be invoked, must have made an admission inconsistent with the evidence he proposes to give, or the title he proposes to ret up, and the opposite party must have acted upon such admission, believing and relying on its truth.

Appeal from the Superior Court of Cook county; the Hon. S. M. Moore, Judge, presiding. Opinion filed May 2, 1879.

Mr. John V. LeMoyne, for appellant; that the endorsement on the contract of the deposit of the deed *in escrow*, was notice to the sub-contractors sufficient to put them upon inquiry, cited Watt v. Scofield, 76 Ill. 261; Russell v. Ranson, 76 Ill. 167.

Appellant is liable for only so much as may be in his hands after reimbursing himself for loss and expense by reason of a failure to carry out the contract: Mehrle v. Dunne, 75 Ill. 239; Culver v. Elwell, 73 Ill. 536; W. U. P. R. R. Co. v. Smith, 75 Ill. 496.

The decision of the architect as to the value of work done or materials furnished, is final: Trustees Illinois and Michigan Canal v. Lynch, 5 Gilm. 521; McAvoy v. Long, 13 Ill. 147; Korf v. Lull, 70 Ill. 420; Taylor v. Renn, 79 Ill. 181.

Mr. E. A. Otis, for appellees; argued that the contract and

its endorsements, and the release by the sub-contractors, being contemporaneous documents, form but one contract, and cited Davis v. McVickers, 11 Ill. 327.

Appellant, by reason of his promises to the sub-contractors, that if they would complete the work they should be paid without regard to the land, should now be estopped from asserting a prior lien thereon: Herman on Estoppel, § 320; Smith v. Newton, 38 Ill. 230; International Bank v. Bowen, 80 Ill. 541.

A cross-bill is indispensable to granting relief to a defendant: Price v. Blackmore, 65 Ill. 386.

BAILEY, J. This was a bill in chancery, filed by the appellees against the appellant and others, to declare and enforce an equitable lien on certain lands described in the bill, which appellees claim were specifically pledged to secure their several claims as sub-contractors under one John Christery. On the twenty-fifth day of August, 1876, appellant and said Christery entered into a contract by which said Christery agreed to construct for appellant four dwelling houses in the city of Chicago, for the sum of $21,628, of which sum $10,128 was to be paid in cash, and $11,500 by the conveyance to Christery of lots 11 and 12, in block 10, in Kinzie's addition to Chicago. By the agreement, fifty per cent. of the architect's certificates were to be paid in cash, as the work advanced, the balance to be reserved to apply in payment for said lots. One C. H. Gottig was named in the contract as the architect, and it was provided that the building should be fully completed by the first day of January, 1877, according to the plans and specifications furnished by said architect, and under his direction and to his satisfaction; that payments should only be made on written certificates of the architect, stating the amount due, and that appellant might make changes in the work, the value of which was to be fixed by the architect by adding to or deducting from the amount agreed to be paid, and his decision in relation to the contract or work was to be final. The last payment was to be made twenty-one days after the houses were completed to the entire satisfaction of the architect.

The contract contained no stipulation as to the time when

Carpenter v. Falter.

the conveyance of the two lots to Christery was to be made, further than is above stated.   It can scarcely be doubted that, by the terms of the agreement, appellant could not have been required to make the conveyance until after the completion of the work.   There seems, however, to have been an understanding between the parties that the deed should be delivered to Christery contemporaneously with the execution of the contract, and that Christery should execute to appellant a bond, with sufficient surety, conditioned for the performance of the contract on his part.   A deed was accordingly prepared by appellant, but Christery being, for some reason, unable to procure a satisfactory bond, the execution of the bond was abandoned, and the deed, instead of being delivered to Christery, was placed in *escrow* with Messrs. Mead & Coe, to be held by them until the completion of said buildings.   Although the contract bore date August 25, 1876, and the deed was dated on the twenty-first day of October following, the testimony leaves it somewhat uncertain as to when the contract was signed by the parties.   Appellant testifies that the deed was made out before the contract was signed.   On the other hand, several witnesses testify to facts tending to show that the contract was in existence some time in the month of August.   Mead & Coe, at the time of the delivery of the deed to them, executed to Carpenter a receipt under date of October 21, 1876, in the following words:

"Received of Benjamin Carpenter, Esq., a warranty deed from B. Carpenter and wife to John Christery, of lots 11 and 12, in block 10, Kinzie's addition, the same to be held in *escrow*, and to be delivered to said Christery on completion of four buildings he is now erecting for said Carpenter on S. W. corner of Dearborn and Chestnut streets, and satisfactory proof that the same are clear of all liens."

The arrangement between the parties under which the deed was deposited with Mead & Coe in *escrow*, was further evidenced by an endorsement on the back of the contract signed by Christery, in the following words:

"I, John Christery, do hereby agree that the deed or title to lots 11 and 12, in Kinzie's addition to Chicago, given by B.

Carpenter to said Christery, shall be held in the hands of Mead & Coe as an *escrow*, until the contract for building Carpenter's four houses shall be fully completed, to the entire satisfaction of the architect, and the sub-contractors settled with."

This endorsement was without date, and the evidence leaves it uncertain whether it was actually made at the date of the contract or at the time of the deposit of the deed with Mead & Coe. Under date of August 25, 1876, a release of claims against appellant by reason of having furnished work or material for the erection of said buildings, was executed by the several sub-contractors under said Christery, including the appellees, as follows:

"We, the undersigned, sub-contractors under said Christery, for the building of four houses on lot 1, block 2, Bushnell's addition to the city of Chicago (being on S. W. corner of Dearborn and Chestnut streets), for Benjamin Carpenter, do hereby release any and all claim that we may have against said Carpenter by reason of having furnished work or material for the erection of said buildings. The consideration, for said release is that said Carpenter has paid to the original contractor (John Christery) for the erection of said four buildings, about one-half the contract price, which half is to be reserved by C. H. Gottig on the different certificates, as the work progresses."

After considerable progress had been made with the work, Christery found a purchaser for one of the lots, and at his request, as well as that of the sub-contractors, appellant consented that the lot sold should be conveyed to the purchaser, whereupon a new deed to Christery for the remaining lot (12) was executed by appellant, and deposited with Mead & Coe upon the same terms as the original deposit. Prior to consenting to such conveyance, however, appellant obtained from the sub-contractors a release, executed by them as follows:

"We, the subscribers hereto, in order to enable Mr. John Chistery to raise money to carry on his work, in the building of four houses for Mr. B. Carpenter, do hereby release any and all claims that we may have against lot No. eleven (11), in

block ten (10), Kinzie's addition to Chicago, which lot, together with lot 12, was placed or held in *escrow* by Messrs. Mead & Coe, for the faithful performance of said Christery's contract with Mr. B. Carpenter."

Upon the withdrawal from Mead & Coe of the original deed, and the deposit with them of the new deed, the following memorandum was added to their receipt:

"Lot 11, block 10, Kinzie's addition, having been conveyed to J. S. Kirk & Co., with consent of both Benj. Carpenter and John Christery, the above deed has been delivered to Benj. Carpenter, and deed of lot 12 above named is left in its place, to be held as above stated."

The evidence shows that the buildings were not completed January 1, 1877, as required by the contract. In order to hasten their completion, appellant, with the consent of Christery (as we think may fairly be presumed) employed workmen and furnished materials, and thereby succeeded in securing the completion of the buildings by the first of May, 1877. In so doing, he expended in cash, over and above the cash payment provided for by his contract, $1,310. The claims of the appellees as sub-contractors not having been paid by Christery, they now claim an equitable lien on said lot 12, and ask to have the same sold in satisfaction thereof. The court below, by its decree, declared the existence of such lien, and after ascertaining the amount of the several claims of said sub-contractors, ordered that the deed held in *escrow* by Mead and Coe be placed on record, and that said lot 12 be sold by the Master, and the proceeds distributed between appellant and the appellees *pro rata*, in repayment of the sum expended by appellant in excess of the contract price and the satisfaction of the several claims of the appellees.

The main question to be considered is, whether, under the facts disclosed by the record, appellees were entitled, as against appellant, to any lien against said lot. We are unable to perceive how such lien can be held to result from any of the written contracts or memoranda between the parties. No lien in favor of appellees is anywhere declared in terms, nor would it seem to arise by implication. The condition in the receipt

by Mead & Coe, and in the memorandum endorsed on the con-
tract by Christery, that the deed should not be delivered to
Christery until he had performed his contract and settled with
his sub-contractors, was certainly inserted for the benefit of
appellant, to compel the completion of the buildings by Chris-
tery and to secure appellant against liens upon his property in
favor of the sub-contractors.   Appellant very properly stipu-
lated that before the lots given by him in part payment for the
work should pass entirely beyond his control, Christery should
see to it that sub-contractors, who, under the statute, might be
entitled to liens, should be paid their claims.   In so far as
withholding from Christery in this manner the title to the lots
until he should pay his sub-contractors would be a means of
coercing such payment from him, these contracts might be
termed a security to the sub-contractors, but no further.   Even
in that view, it was not a security which they were entitled to
enforce.

The release by the sub-contractors to appellant of their lien,
executed cotemporaneously with the original contract with
Christery, recited as its consideration that appellant had already
paid Christery one-half the contract price, and that, as the
work progressed, one-half of each certificate was to be reserved
by the architect.   No mention whatever is made of any lien
in favor of the releasors on the property, the conveyance of
which was to constitute the payment referred to.   In the paper
by which the sub-contractors release any claims they may have
upon the lot about to be sold, the purpose of the deposit of the
deed in *escrow* with Mead & Coe is expressly declared, namely:
" for the faithful performance of said Christery's contract with
Mr. B. Carpenter."   This would seem from its very terms to
exclude the claim of a deposit for the benefit or security of the
sub-contractors themselves.

There is, however, evidence tending to show that prior to the
execution of contracts between Christery and the sub-contract-
ors, they were assured by appellant that the deposit of the
deed with Mead & Coe was for their benefit and security.   It
further appears that the contract between appellant and Chris-
tery, and the endorsement thereon by Christery, declaring the

purpose for which the deposit of the deed in *escrow* was made, was in the architect's office at and before the time of the execution of the contracts with the sub-contractors, and was there seen and examined by them. It is insisted by appellees that from these facts an estoppel arises by which appellant should be concluded from insisting that no lien on said lot exists in favor of appellees. It is a fundamental principle of the law of estoppel *in pais* that the party against whom the estoppel is sought to be invoked must have made an admission inconsistent with the evidence he proposes to give, or the title he proposes to set up, and also that the opposite party has acted upon such admission, believing and relying on its truth. Whatever statements may have been made by appellant to the sub-contractors, the real contract between him and Christery was in writing, and the sub-contractors appear to be fully chargeable with knowledge of its terms. They cannot be heard to claim that they acted on the faith of appellant's oral statements so long as they had full knowledge of the contract as it really existed. By that contract no lien was declared in their favor, but the deed appeared to be held in *escrow* for the benefit of appellant and Christery, and them alone.

The deed, then, having been deposited in *escrow* to secure the faithful performance of Christery's contract with appellant, he retained a lien upon the lot to secure him against Christery's default in the performance of his contract. Christery failed to perform in the time agreed upon, and appellant, to avoid unreasonable delay in the completion of his buildings, expended a large sum of money in excess of the cash payments he had agreed to make. To reimburse himself for such expenditures, he is, we think, clearly entitled to enforce his lien, and to be paid out of the proceeds of the sale of the lot in preference to appellees.

The decree will be reversed and the cause remanded, with instructions to the court below to so modify the decree as to provide, in the distribution of the proceeds of the sale of said lot, for the payment to appellant of the amount expended by him in the completion of said buildings in excess of the amount due under the contract, in full; the residue, if any there be, to be distributed *pro rata* in payment of the claims of appellees.

Decree reversed.