ST. LOUIS, ALTON & TERRE HAUTE R. R. CO.

v.

CITY OF BELLEVILLE.

</div>

1. ORDINANCE VOID, NOT PASSED BY LEGAL MAJORITY.—The ordinance vacating Spring street, having been passed by a vote of less than three fourths of the members of the council as required by statute, is held void.

2. PUBLIC HIGHWAYS—RAILROADS.—While it is a legitimate use of a street or alley of a city or town, to permit railroad tracks therein, yet under

St. L., A. & T. H. R. R. Co. v. City of Belleville.

the decisions of our Supreme Court such use must be consistent with the public interests in them, and such city or town can not confer upon any one an exclusive right to their use, thereby depriving them of their character of public highways.

' 3. ESTOPPEL IN PAIS.—As the city never legally consented to allow the appellant the exclusive use of the street, or to its obstruction beyond that incident to a reasonable and proper management of the trains, the doctrine of *estoppel in pais* does not apply.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE W. WALL, Judge, presiding.   Opinion filed November 24, 1886.

This action was instituted by the city of Belleville to recover a penalty provided by ordinance for the obstructing of a street in Chandler and Abend's addition to the city.   The road of appellant runs in a northwest and southeast direction through such addition, crossing Richland, Spring and Illinois streets running north and south, and Sixth and Seventh South streets running east and west.   The depot of the railroad is located on Seventh South street, to the east of its junction with Spring street, and the appellant claims the right to the exclusive use of Spring street for its yards and necessary use.   The appellant is the successor of the Belleville and Illinoistown Railroad Company and entitled to all its property, privileges, grants and franchises.   It appears from the record that Spring street, running north and south, and the next street west of the depot of appellant upon Seventh street, was dedicated to the city of Belleville in 1849.   In 1853 a resolution was adopted by the city council permitting the predecessor of appellant to use certain streets of the city, which was as follows:

" *Resolved, by the city council of the city of Belleville,* that the use of the following named streets in the city of Belleville, in Chandler and Abend's addition thereto, be and the same are hereby appropriated to the Belleville and Illinoistown Railroad Company, so far as the said company may require to appropriate the same in crossing them, in the construction of their railroad track, switches, turn-tables, and other machinery and fixtures necessary to be used or employed by them in operating said road, namely: High, Illi-

nois, Spring, Richland, Race, Fourth, Fifth, Sixth and Seventh South streets, and such alleys in said Chandler and Abend's addition as are crossed by said road track, *Provided*, that the same shall be occupied with as little detriment and inconvenience to the public as possible, and if the said railroad shall find it necessary in crossing any of said streets to raise embankments across the same, the streets crossing said embanked street shall be so graded as not to make their said embankments an obstruction to crossing the same."

The plaintiff below also introduced an ordinance prohibiting the obstruction of street crossings of any railroad by leaving thereon any car, etc., and on the trial the defendant admitted that it had obstructed Spring street before the commencement of the suit. The defendant claimed that that portion of Spring street within its yards had been vacated in 1852, and until that part of the addition south of its road had been considerably built upon, no controversy had arisen between it and the public, concerning their use of Spring street. No action of the city council entered of record was introduced, showing any such vacation. It was also claimed that when the people living along Spring street south of the road, made complaints that on account of the railroad obstructing the street they were prevented from going to the northern part of the city, the council appointed a committee to consult with the railroad authorities about the matter, and an understanding was reached that the railroad should procure the ground and lay out a roadway on or near the south line of its right of way, connecting Illinois street with Spring street, and Spring street with Richland street, thus enabling persons to pass from Spring street to either of the others, and there cross the tracks of the road. This the railroad company did, but as in the case of the vacation, there seems to be no record evidence of the action of the city. The city council, on July 5, 1885, passed an ordinance by a majority vote, vacating so much of Spring street and Seventh South street as lies in the depot and railroad grounds, upon condition that the roadway, built by the company between Spring and Illinois streets, should be dedicated to the city, and the roadway from Spring to Rich-

land street should be kept open and maintained for travel by the company. It was further shown that a deed was prepared by the company and given to the city attorney, and some time afterward upon the claim of the attorney that he had lost it, a duplicate was executed and delivered to him, conveying the roadway between Spring and Illinois streets, which was subsequently laid before the council, when a resolution was adopted reciting that the ordinance vacating the street was not passed legally by the council, and that the present council refused to pass that or any similar ordinance, and the clerk was therefore ordered to return the deed to the railroad company. This deed was sent back in accordance with the resolution. The first deed was never presented to the council. The court, trying the cause without a jury, found the defendant guilty, and assessed the penalty of ten dollars, and the defendant appealed.

Mr. R. A. HALBERT, for appellant; that it is a legitimate use of a street or highway to allow railroad tracks to be laid on it, and a city may grant the right to use a street or a particular locality therein for particular purposes of trade, cited Moses v. P., F. W. & C. R. R. Co., 21 Ill. 523; Murphy v. City of Chicago, 29 Ill. 279; Chicago v. Rumsey, 87 Ill. 361; I. C. R. R. Co. v. Grabill, 50 Ill. 244; C., R. I. & P. R. R. Co. v. Joliet, 79 Ill. 25.

As to *estoppel in pais* of a city: C., R. I. & P. R. R. Co., v. Joliet, 79 Ill. 25; Logan Co. v. Lincoln City, 81 Ill. 156; C. & N. W. Ry. Co. v. People, 91 Il . 254; Quincy v. C., B. & Q. R. R. Co., 92 Ill. 21; Martel v. East St. Louis, 94 Ill. 67.

Mr. M. W. SCHAEFER, for appellee; that a railroad company can not procure a public street to the absolute exclusion of the public, cited Stack v. City of East St. Louis, 85 Ill. 381; City of Pekin v. Brereton, 67 Ill. 480; City of Jacksonville v. Jacksonville Ry. Co., 67 Ill. 540; City of Quincy v. Jones, 76 Ill. 231; Village of Princeville v. Auten, 77 Ill. 325; City of Morrison v. Hinkson, 87 Ill. 587; P., F. W. & C. R. R. Co. v. Reich, 101 Ill. 157; City of Quincy v. Bull, 106 Ill. 337;

Chicago Dock & Canal Co. v. Garrity; Parlin v. Mills, 11 Bradwell, 402; Dillon on Municipal Corporations, 2d Ed. § 581.

Even if the evidence would warrant an *estoppel in pais* in favor of appellant, it would be no defense in this case : Canal Trustees v. Haven, 11 Ill. 554; City of Quincy v. Bull, 106 Ill. 349.

PILLSBURY, J.   The ordinance of July 5, 1883, attempting to vacate a portion of Spring street for the exclusive use of the appellant, was not legally passed, as the record shows that at that time the council was composed of fourteen aldermen, of whom but nine voted for its passage, less than three fourths of all its members, the number requisite to pass a valid ordinance for the vacation of streets and alleys (R. S. 1874, Chap. 145, Sec. 1), and therefore under this ordinance the appellant can not sustain its position that it had the right to the use of the street to the exclusion of the public.   This ordinance never having been passed by a legal majority of the council, the question arises whether by any other acts, ordinances, grants, or resolutions of the city, or by virtue of any law of the State, the appellant has acquired the right of possession and use of Spring street, to the exclusion of the public from its use as a way for travel. , The only other ordinance or resolution relating to the use of the street by the railway, is that of 1853, granting the right to the Belleville and Illinoistown Railroad Company, to whose rights the appellant succeeded, to use certain of the streets for railroad purposes, with a *proviso* therein contained, as above set forth.   This ordinance would seem to be a fair exercise of the powers conferred upon municipal corporations to permit the streets of the city to be used for railroad purposes, as while allowing such use, it carefully preserves the right of the public to the joint use of them as ways with the railroad company.   While it has ever been held in this State that it was a legitimate use of a street or alley of a city or town to permit railroad tracks therein, yet it seems to be now the settled doctrine of the Supreme Court that such use must be consistent with the public interests in them, and such city or town can not confer upon any one an

exclusive right to their use, thereby depriving them of their character of public highways. Thus, in the case of City of Jacksonville v. Jacksonville Ry. Co., 67 Ill. 540, the court says: " Streets and a public square are donated. Each has a well known and well defined use and meaning. The one was designed for the purpose of travel; and the right of passage over the streets in any mode not to destroy their usefulness, was given by the plat. * * * The power of the legislature to repeal the charters of municipal corporations can not be extended to the right to divert property to the public for one use to a wholly different and inconsistent use. The power can not exist to divert property from the purpose for which it was donated." In the case of Quincy v. Jones et al., 76 Ill. 231, the court says: " It is the unquestioned duty of the city in controlling and improving the streets, to prepare them for public use as streets at such time and in such manner as the public necessities may require. Holding them in trust for the public, and having no authority to convey or divert them for other uses, it would seem inevitably to follow that they can have no power to grant to individuals rights or easements in the street which might in any way interfere with the duty of preparing them for the public use, to meet the public necessities; for it is obvious that if such rights may be granted, then the practical use of the streets may become so burdened with private rights as to place it beyond the pecuniary ability of the city to discharge its duty to the public with reference to them. It is not consistent to say that a city owes a duty to the public, and yet that it may voluntarily place it beyond its power to discharge that duty." Also citing Dillon on Municipal Corporations, Sec. 541: " The fundamental idea of a street is not only that it is public, but public for all purposes of free and unobstructed passage, which is its chief and primary, but by no means sole use." In the case of Stack v. City of East St. Louis, 85 Ill. 377, in which several of the former decisions were reviewed, the court says: " It is true that the city holds the fee, but it is in trust for the use of the public for the purposes of a street. The city has no power to sell, lease, or otherwise appropriate it to other purposes; nor can

it be closed or obstructed so as to deprive the public from its
use as a highway.    Such public passways are indispensable to
the owners of lots in cities and villages.    They are laid out
and appropriated for that purpose, and it is the duty of the
city government to keep them open and in repair, for the use
of all persons who desire to use them for travel or passage
over them.    It has, however, been held that a city or village
may authorize the laying of railroad tracks in their streets;
that such a use is not inconsistent with the trust for which
they are held by the city.    But in thus permitting them to be
used, the city has no right to so obstruct the streets as to de-
prive the public and adjacent property holders from their use
as streets.    The primary object is for ordinary passage and
travel, and the public or individuals can not be rightfully de-
prived of such use," etc.    So in City of Morrison v. Hinkson,
87 Ill. 587, it was held that a part of the street only could not
be permanently used by the city for the erection of a water-
tank, even for the purpose of supplying the city and residents
thereof with water.    In the case of Pitts., Ft. W. & C. R. R.
Co. v. Reich, 101 Ill. 157, the grant to the railroad com-
pany was similar to the resolution of 1853 in this case, in
which the court says: "Although, in a general sense, high-
ways or streets, where the fee is in the State or a municipal
corporation, are lands belonging to the people of the State or
to the municipal corporation, they are in legislation univer-
sally, so far as we recall, referred to as 'highways,' or 'streets,'
and not as public lands.    The ownership in reality in such
cases is but nominal, and entirely subordinate to the public
trust for which the title is held.    It results, then, that while
under its charter the railroad corporation may doubtless have
had the right to lay its tracks in Stewart avenue, that right
was not an exclusive one, and could only be enjoyed in com-
mon with the use of the avenue by the public as an ordinary
highway, and without materially impairing its usefulness as
such."    So in the case of Chicago Dock and Canal Co. v. Gar-
rity, 115 Ill. 155, the court says:   "It is not claimed that the
use of streets can be permanently granted for private pur-
poses; and we recognize as unquestionable law that the use
of the streets, whether for vehicles drawn by animals, for

St. L., A. & T. H. R. R. Co. v. City of Belleville.

those riding upon animals, for footmen, or for the passage of railway cars, must be for the public, and that no corporation or individual can acquire any exclusive right to their use, or the use of any part of them for private purposes." The claim of the appellant here is to the exclusive right to use and occupy Spring street for railroad purposes, and to close up the street if they so desire, by leaving its cars upon the tracks of its road where they cross the street, thus preventing any person from crossing the track along the street. This we think, under the authorities cited, it can not do, nor can the city, in violation of its trust to the public, authorize it so to do. It is not denied by the appellee that the appellant has a right to use the street in common with the public, but denies its right to the exclusive use of it, or unreasonably to obstruct public travel upon it by leaving its cars standing upon it as a place of storage for them. The acts of the city officials and the ordinance of the city, properly passed, which are relied upon as an *estoppel in pais*, can not have the effect claimed for them, as from the evidence it appears that at no time has the city ever legally consented to allow the appellant the exclusive use of the street, or to its obstruction beyond that incident to a reasonable and proper management of its trains. And if it had done so, such acts could not have bound the public, which, under the dedication, had an equal right to its use, and would not be concluded by acts of the city authorities, which only established a violation of the trust imposed upon it in favor of the public by the dedication, and voluntarily accepted by it. As the appellant claimed the right to obstruct the street for the reason that it had the right to exclude the public from its use, its admission that it had obstructed it should be taken as concluding it that such obstruction was in the assertion of such claimed right, and as we have seen no such right did or could exist, the court was right in holding it liable to the penalty imposed by the ordinance. What we have said disposes of the propositions of law submitted to the court, and justifies its action in refusing them, and it is unnecessary further to notice them. The judgment will be affirmed.

<div style="text-align:right">Judgment affirmed.</div>