TOWN OF RICE

v.

CHICAGO, BURLINGTON & NORTHERN RAILWAY COMPANY.

*Highways—Railroads—Exclusive Use of Road—Agreement with Commissioners—Validity of—Estoppel—Trespass—Prosecution for Statutory Penalty—Eminent Domain.*

1.  A public highway can only be vacated in the manner provided by statute.

2.  The statute does not authorize the commissioners of highways to substitute one road for another.

3.  The commissioners of highways have no authority to surrender the entire use of a public road to a railroad company in exchange for a new road to be provided by the company.

4.  In the case presented, the town is not estopped merely because the railroad company has expended a considerable sum in providing the new road under its unauthorized agreement with the commissioners of highways.

5.  The defendant company having taken exclusive possession of the public highway in question under such unauthorized agreement, is subject to prosecution under the statute imposing a penalty for obstructing a highway.

6.  It *seems* that property in public use can not be wholly taken for another and different public use by the power of eminent domain under the statute.

[Opinion filed December 18, 1888.]

APPEAL from the Circuit Court of Jo Daviess County; the Hon JOSEPH M. BAILEY, Judge, presiding.

Mr. E. L. BEDFORD, for appellant.

It is the duty of the commissioners of highways to have the care and superintendence of highways, and to take measures to open and keep them in repair, cause obstructions to be removed, etc.   Pittsburg & Ft. W. R. R. v. Reich, 101 Ill. 157; R. S., Ch. 121.

It would seem inevitably to follow, that they can have no power to grant to individuals (corporations) rights or easements in a street which might in any way interfere with the duty of preparing them for public use to meet the public

necessities.    St. L., A., etc., R. R. Co. v. The City of Belleville, 20 Ill. App. 580.

As to the claim that the railway company, appellee, was authorized by the fifth clause of Sec. 20, Ch. 114, to take the road in question, to the exclusion of the public, we submit that such a right can not be claimed under the most recent decisions of our Supreme and Appellate Courts; nor can the railway company claim any authority to take this road by reason of the contract of the company with the commissioners.    Such contracts are void.    Pittsburg, Ft. W. & C. R. R. Co. v. Reich, 101 Ill. 157.

In the case at bar it is obvious from an examination of the evidence that there is not sufficient room between the bluff and the Mississippi River for both a public highway and the railroad track.    The public, represented by the town of Rice, had the first and permanent right to the *locus in quo*, and in that case the railroad must restore the road to its former condition of usefulness.    See Town of Jamestown v. Chicago, B. & N. R. R. Co., 34 N. W. Rep. 728.

The tendency of all the recent decisions and commentators on this subject seems to tend to the same conclusion; and a recent writer on the subject of eminent domain says, in construing the words used in similar statutes to our own, viz., "But such corporation shall restore the stream, street, highway, etc., thus intersected or touched, to its former state, or to such state as not unnecessarily to have impaired its usefulness," that such words do not authorize a permanent occupation or obstruction of the highway.    The word "usefulness" implies capabilities for use and appertains to the future as well as the present.    The fact that the public travel over the road may, for the time being, be limited, does not lessen the duty to restore.    A failure to restore constitutes a public nuisance.    * * * An encroachment on a public highway can not be justified by adverse possession and enjoyment.    The continuance of the nuisance is, in judgment of law, a fresh nuisance.    Mills on Eminent Domain, Secs. 198, 199 and 200, and authorities cited.

Mr. M. Y. Johnson, for appellee.

The contract is evidence of the railroad's right to enter upon said highway and construct its railroad, there can be no doubt. The consent given not only contemplates an obstruction to the road, but it is an absolute appropriation of the whole highway to the railroad. The law gives the railroad the right to enter upon it and build its road. They were there lawfully and rightfully, so it could not be an obstruction in contemplation of the seventy-first section.

If it were true, which it is not, that the railroad had not restored the highway to its usefulness, as it is required both by law and contract to do, that can not affect the case at bar, where they are suing for a penalty. But the restoring of the road is a condition subsequent to the taking, and is imposed by law, so as not to unnecessarily impair its usefulness. The topography of the ground, as in this case, may be such there is not sufficient room over the line of the route to restore the road so as not unnecessarily to impair its usefulness, and in carrying out the mandate of the statute it may be necessary to substitute some other route, as in this case. The highway commissioners selected the route where they wanted the road, and the railroad engineer located and surveyed it as pointed out by the commissioners, and the company purchased and dedicated the ground and built the road at an expense of some $6,000.

If the railroad had to restore it on the same ground, or by the side of the old road, here it would be a physical impossibility, and there could be no railroad there, and the statute would be defeated when it says it shall be restored, "or, to such state as not unnecessarily to have impaired its usefulness;" with the provision, the railroad may run along or over any highway the route of its road shall intersect or touch, on obtaining the consent of the lawful authorities, having jurisdiction of the road; and it then confers on the highway commissioners the charge of the roads in their respective towns; that they are to lay out, change, alter, widen or fix such roads, and to exercise such care and superintendence over the roads as the public good may require.

The consent to occupy the road is the only inquiry in this case; not what contract they made, or what consideration moved them to make it. In what does the illegality consist, then? What makes it "void?" The appellant does not point it out. The law imposes it as a condition we are required to show that we are lawfully there, and if lawfully there, we are not subject to the penalty, for a penalty can not be inflicted for doing a lawful act.

LACEY, P. J. This was a suit originally commenced before a justice of the peace by the appellant under Sec. 71, Chap. 121 R. S., known as the "Roads and Bridges act," to recover the penalty announced in the said section for obstructing a public highway in the town of Rice, the fine being not less than three and not more than ten dollars for the offense of obstructing a public highway as fixed by the statute.

The case was tried before a justice of the peace and appealed to the Circuit Court, and there tried anew by the court without a jury, resulting in the finding of the court and judgment in favor of the appellee, which was the defendant. From that judgment this appeal is taken to this court and a reversal sought.

It appears that the appellee was a railroad company, duly organized under the general laws of the State of Illinois, and was engaged in building its railroad through said town, and in so doing took and occupied with its railroad track, embankments and fences, the entire highway for a distance of about three miles over Sections Nos. 33, 28 and 21 in said town of Rice. On the west side of the highway in question was the Mississippi River and on the east a high bluff from three to four hundred feet high, the road being located on a bench extending along the bluff so narrow that there was only room for the railroad and not room for both it and the highway. By means of the railroad structure, as above stated, the public was entirely excluded from the use of the public highway.

The evidence shows that the public had used and occupied this strip of land in question as a public highway since 1842, a period of over forty years, and had kept the same in repair. In fact, that it was a road by prescription unless the State

owned it, and the appellee became the owner of it through the acts of the Legislature, which we will notice hereafter.

The appellee defended the action and claimed the legal right to obstruct the highway in the manner stated under and by virtue of an agreement with the commissioners of highways of the said town and in pursuance of Clause 5, Sec. 20, Chap. 114, R. S., entitled Railroads and Warehouses.

The contract with the commissioners and appellee, so far as it related to the matter in question, was as follows:

"For the consideration aforesaid, the commissioners of highways of said town agree to permit the said railroad, or its agents or contractors, to enter upon and take possession of and use the public highway as located upon sections 33, 28 and 21 in said town of Rice, without hindrance from them, and, upon petition therefor by the lawful number of land owners residing near said last named road, will vacate the same from the residence of Mr. Nicholas Peschang, in Section 33, in said town, north to a point at or near the residence of Mrs. Rosanna Wise, in section 21, in said town.

"Witness our hands the day and year above written, and signed by J. W. Traer as general agent of the railroad company and the highway commissioners as such commissioners."

And the clause of the statute above cited under which the authority is claimed to make such contract, and under which its powers are enumerated, is as follows: "To have power to construct its railway across, along or upon any stream of water, watercourse, street, highway, plankroad, turnpike or canal which the route of such railway shall intersect or touch; but such corporation shall restore the stream, watercourse, street, highway, plankroad and turnpike thus intersected or touched to its former state, or to such as not unnecessarily to have impaired its usefulness, and keep such crossing in repair. * * * *  *Provided*, that in case of the constructing of said railway along highways, plankroads, turnpikes or canals, such railway shall either first obtain the consent of the lawful authorities having control or jurisdiction of the same, or condemn the same under the provisions of any eminent domain law now or hereafter in force in this State."

The appellee took possession of the public highway under the said contract, and it is insisted by counsel for it that it is legally in possession and the contract properly made under and by virtue of the above act of the Legislature, and under which act it was incorporated, and this is the main question to be decided here.    It is insisted that under this act, in case of a failure to agree with the commissioners of highways, the railway company may condemn, under the eminent domain act, the entire road, and entirely exclude the public therefrom if it should be necessary for the legitimate purposes of the railroad for its track and embankments, and the same right could be acquired by agreement with the commissioners.

On the contrary, the attorney for the appellant insists that, under the above statute, the appellee was only authorized to acquire a joint use of the highway and in such a manner that the highway should not be materially impaired for public use; that the agreement was utterly void, because it gave up the entire road to the use and occupation of the appellee.    Without the act above mentioned, it has long been held in this State that the authorities of cities and villages can not grant away the exclusive use of a street, and the same rule applies to the commissioners of highways.    Neither can one railroad condemn the property in public use by another so as to impair its utility.    The Central City Horse Railway Co. v. The Fort Clark R. W. Co., 81 Ill. 523; The Peoria, Pekin & Jacksonville R. R. Co. v. Peoria & Springfield R. R. Co., 66 Ill. 174; Met. City R. W. Co. v. Chi. W. D. Ry. Co., 87 Ill. 317.    In the latter case it is stated that the decisions in other cases cited are "put upon the distinct ground the property sought to be condemned was already in the use and occupation of the public and the taking a part of the road would effectually destroy the usefulness of that which remained.    But that is not the case here."  87 Ill., above, 525.  The same doctrine is announced in St. L., A. & T. H. R. R. Co. v. City of Belleville, 20 Ill. App. 580, and since in same case, on appeal, approved by the Supreme Court, 122 Ill. 482.    It is deducible from all the above cases that where the right of taking property for public use exists under the eminent domain act, the statute is not to

be construed as to take property already in the public use, so as to impair its usefulness for such public use, nor is there anything in the section of the statute above referred to that would indicate a change of policy.

The right to condemn a portion of the right of way of one railroad by another under the section in question, although by so doing the operations of the railroad whose right of way was sought to be taken would not be seriously impaired thereby, was brought in question in I. C. R. R. Co. v. C., B. & Q. R. R. Co., 122 Ill. 473, and it was held that the statute did not confer the power.

The question as to the right to condemn a public highway, as here, where a part of the road at least was necessary for the public use, was not directly in question, though the reasoning in the case would lead us to the conclusion that it could not be done under such act. If, then, the entire highway could not have been condemned and taken under said section and under the eminent domain act, it will be apparent that the commissioners of highways could not grant such privilege. They are the overseers of the highways, with certain duties defined by the statute, no part of which is to sell or give away the entire highway, which is no more nor less than vacating it. If a public highway is to be vacated it can only be done in the manner pointed out by the statute, upon the petition of twelve legal voters residing within certain distance of the road, as provided by the statute. Neither can a new road be laid out by the commissioners under contract with the railroad company, as attempted here.

There is no right given by the statute to substitute one road for another, as was attempted here. It appears that, by agreement between the commissioners of highways and the railroad company, the latter purchased the right of way and graded a new road around and over the bluff east of the old road, and expended in so doing some $6,000. It was sought to substitute this new road for the old one. This, we think, was beyond the power, either of the commissioners to accept, or the appellee by its action to bind the appellants to vacate the old road. The old road must be vacated, if at all, in the legal way.

There could not be any estoppel *in pais* as against the appellant, because the appellee has expended money in pursuance of the agreement; for it very well knew such an agreement on the part of the commissioners was beyond their power and void. It is said in Railroad Co. v. The City of Belleville, 122 Ill. 376, that "no one pretends that a person having no authority to do an act can, by his conduct, estop others not responsible for his acts; and hence no reason is shown why any reliance should have been placed by the railroad company upon the acts or promises of a committee of the council which was shown to have no power itself to vacate streets, or upon the conduct of the city attorney, who was known to be equally destitute of such authority."

The same may be said here. The commissioners of highways were powerless to vacate the road or grant it to appellee in the manner in which they attempted, and this was as well known to the appellee as any one, as their authority rested on the statute. We do not understand, however, that counsel for appellee bases his right to introduce such evidence in order to make out an estoppel, but he insists the evidence is competent by way of showing that the road was restored and its usefulness not impaired more than the necessity of the case required. This position is not tenable, as the road was not at all restored, but only an attempted substitution. Nor do we understand that the language of the statute requiring a railroad company to restore the highway after intersecting or touching it, as allowed by the statute, to its former state, or to such state as not unnecessarily to impair its usefulness, can be construed to mean that, if necessary, the railroad company may take the entire road while it is being used for the public travel, to the exclusion of the public from the use of the road.

It follows, then, that the appellee was a trespasser in taking possession of the highway in question, and subject to prosecution under the criminal law of the State for obstructing the highway in question. The whole proceeding was illegal and the obstructions were placed in the highway without authority of law.

Town of Rice v. C., B. & N. Ry. Co.

There is another question raised by counsel for appellee. It claims title to the strip of land over which this road runs through a grant from the United States to the State of Illinois, and from the State of Illinois to a certain railroad, and from such railroad to it. But, without going into a discussion of the evidence, we think the evidence fails entirely to make out such claim, even if the State had once the right claimed, a point we need not decide; the evidence fails to show that appellee connected itself with it. Indeed it took possession under the void agreement with the highway commissioners, not claiming different right at the time. We think that the court, under the evidence, erred in finding appellee not guilty.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

C. B. SMITH, J. I can not concur with the reasonings or the conclusions of the majority of the court in this case. Still, if nothing more was involved than the small fine which might be imposed under this proceeding, I should let the matter pass; but much more is involved; and if the judgment of the majority of the court is correct, then the end of this proceeding is to take away from the defendant three miles of its right of way, purchased at a cost of $6,000, and also to enable the town of Rice to retain the public highway made for it by defendant, at a cost of $6,000, in lieu of the one now occupied by the defendant for its railroad track.

Two positions are maintained by the majority of the court:

First. That property once dedicated to public use by any of the various modes used to accomplish that end can not be again wholly taken while so in public use by the power of eminent domain under the statute and appropriated to another and different public use.

Second. That officers of a public highway can not, by agreement, surrender the entire use of a public road to another public use, as for example a railroad, so as to entirely exclude the public from the use of such road.

The first proposition discussed by the court does not arise in this case, nor do I understand the court to make such claim;

but it is discussed to aid the argument, and the conclusion reached under the second proposition by ana'ogy. There was no attempt to condemn the road in controversy, and defendant rests its right to the use of the road under the contract set up in evidence with the highway commissioners.

First.   I hold that the commissioners had the lawful right to make the contract set up, and that the township was bound by it.

. Second.   I hold also that, even if it be conceded that the commissioners did not have the right to make this contract, still, under the circumstances in proof in this case, the township is estopped now to deny their authority.

First, as to the power to make the contract in question.   So much of the 5th clause of the 20th section of chapter 114, R. S., as relates to this controversy, provides as follows: "*Provided* that in case of the constructing of said railway along highways, plankroads, turnpikes or canals, such railway shall either first obtain the consent of the lawful authorities having control or jurisdiction of the same, or condemn the same under the provisions of any eminent domain law now or hereafter in force in this State."   A prior part of the same clause authorizes a railroad company to construct its roadbed "along or upon any highway" under the provisions above quoted.   The commissioners of highways are the officers who have charge of the roads, and the contract was made with them.

Under this clause of the statute the highway commissioners were authorized to consent to the use and occupancy of this road by the defendant, and having the power to act they could bind the town.

The statute does not point out the method nor the terms upon which the consent to the use of the road may be given. The power conferred is general.   Where there is a general power given a municipal corporation to make a contract or to do a particular thing, then all necessary and appropriate power to make the contract or to do the particular thing shall be implied: Dil. on Municipal Corp. Sec. 447; and where the authority conferring the power does not specify any particular mode, then any appropriate mode is permissible. *Ib.* Sec. 449.

And so, if the power exercised is germane to the statute, the contract or thing done will be upheld as an incident to the general power.   Chicago Building Society v. Crowell, 65 Ill. 453;  West v. Agricultural Board, 82 Ill. 205.

Secondly.   Is the town of Rice now estopped from denying that it had the power to make the contract in question?

The consideration which led the commissioners of highways to make this contract is not stated in the opinion of the court. What the consideration was to this township for giving up this road is very important to a just understanding of the rights, and of the subsequent conduct of the parties.

The consideration, as stated in the contract, was the location of the two other roads in the township by the railroad company, the defendant.   These roads were both afterward located and laid out upon lines selected by the commissioners of highways and the road was opened, graded and fully completed by the defendant at a cost of about $6,000, and the town now has both of these roads, and are exercising ownership over them and working them, and the public using them.   No question is made by the town that these roads are not now public highways, used by the town and public, nor that the defendant has not to the fullest extent kept its undertaking in good faith with the town.   Indeed, the defendant has done more than it agreed.   It has made a private road at considerable expense for a land owner who was discommoded by the defendant taking the old road.

The old road was taken under this arrangement in 1885, and the new public roads were commenced and completed in 1886.   The suit to recover the penalty for obstructing the road was begun in April, 1887, nearly two years after the defendant had occupied and obstructed the old road under the contract, and is commenced by two of the same commissioners who made the contract with the defendant, and who directed the location and construction of the two new public highways by the defendant.   None of these things were done in a corner.   The occupation of the old road by the defendant, the building of the new road and the change of the travel from one to the other were all open and notorious acts, cer-

tainly known to all the inhabitants of the town, and it is reasonable to suppose that the people knew what the arrangement was with the railroad which thus brought about the abandonment of a road which had been used for forty years, and new ones substituted. Both the commissioners and the people saw the defendant expending large sums of money on these new roads, and, so far as this record discloses, not a word of protest or even objection was ever raised against the arrangement until the defendant had completed the new roads and expended its money, relying on the honesty and good faith of the commissioners and the people, and the township, were in the secure possession of the roads. Not until it was too late to restore the defendant to its original status; not until after the commissioners and township had received $6,000 as the proceeds of what they now claim was an illegal and void contract did they ever utter a word of protest or complaint. After they are secure in the full benefit of their share of this contract, and after the defendant had expended large sums of money, for itself in constructing its road along this three miles of rugged hill-side, as well as for the township, the township, by the self-same commissioners, now seek to repudiate their own deliberate acts, and thereby perpetrate a most grievous wrong and deliberate fraud, upon the flimsy plea of *ultra vires*.

In the face of these deliberate and admitted acts, with the honest money of this defendant safe in their hands, these same commissioners now stand up with unblushing effrontery, confessing their fraud, and say that against such conduct there is no law. I insist that the law is full and ample to estop this township and these commissioners from succeeding in this nefarious and dishonest scheme.

We have not far to search for authority to enforce so wholesome a rule of morals as well as of law. In The International Bank of Chicago v. Bowen, 30 Ill. 531, the Supreme Court crystalizes the law on this subject in the following brief and concise statement:

" Where an act is done or a statement made by a party which can not be contradicted or contravened without fraud

on his part, and injury to the others, whose conduct has been influenced by the act or statement, the character of an estoppel will attach to what would otherwise be mere matter of evidence, and the party will be concluded from denying or disproving it." The rule here laid down is fully sustained by the following cases: International Bank v. Bacon, 80 Ill. 541; Chandler v. White, 84 Ill. 435; Kinnear v. Hackey, 85 Ill. 96; Noble v. Chrisman, 88 Ill. 186; McCarthy v. Lavasche, 89 Ill. 270; Carpenter v. Felter, 4 Ill. App. 45.

And in Ward, Receiver of the Merchants Bank, v. Johnson, 95 Ill. 215, the bank had borrowed large sums of money and, upon an effort being made to compel payment, the defense of *ultra vires* was set up, but the court held it estopped.

Where a municipal corporation has the power to act, and, under such power, enters into contract with others, and the contract becomes executed, and such other contracting parties have, in good faith, expended money on the faith of such contract, then in such cases the corporation will be bound, although the officers may have proceeded irregularly. Hitchcock v. The City of Galveston, 96 U. S. 341; State Board of Agriculture v. Street Railway, 47 Ind. 407; Alleghany City v. McClusken, 14 Pa. St. 81; Arginte v. The City of San Francisco, 16 Cal. 255.

The above cases, gathered from different States, and all cases where municipal corporations had entered into various obligations through their officers, and afterward, when the contracts were executed and others acted on the faith of these and expended money, and performance was sought to be enforced against them, they set up the plea of *ultra vires* as a defense, but in every instance the court held them estopped.

But if it be said we are not bound by these cases, then I quote the language of our own Supreme Court in Maher v. The City of Chicago, 38 Ill. 269, where the defense was *ultra vires*, where the court say : " A municipal corporation which, by its own acts, disregards its own ordinance, is estopped from afterward repudiating such acts."

Without stopping to cite the authorities, I may refer to the long line of cases known as city, county and township bond

cases, where bonds were issued in aid of railroad building by the various municipal authorities of this country, and upon suit being brought to compel payment, the plea of *ultra vires* was interposed, but with what success is well known to the courts and the bar. With wonderful unanimity the courts everywhere held the corporations estopped from denying their power after the roads were built and the bonds had passed into the hands of innocent parties. In many, if not in most of this class of cases, the estoppel was placed on the ground that it would be a fraud to allow municipal corporations to vote bonds in aid of roads, and then, after the roads had been built and innocent people expended their money on the faith of the vote, to allow them to have all the benefits of the road and at the same time refuse to pay the bonds.

The plea of *ultra vires* is designed to protect the municipal corporations against the unlawful and unwarranted acts of the officers, acting without authority, and may be invoked as a shield of defense in cases of unexecuted contracts, and in cases where the municipality has not profited by the alleged illegal acts of its officers.

But I think we shall search in vain for any well considered case showing that a municipal corporation may use the plea of *ultra vires* as a sword of offense where its officers have made contracts greatly to its financial advantage, upon doubtful, or even want of any authority, and where the municipality has ratified the alleged illegal act by taking the proceeds of the contract and deliberately appropriating them to its own use, and then be allowed to turn on its victim and again rend him and despoil him, and punish him criminally. This is carrying the rights of the plaintiff to a most unreasonable, and I think, unwarrantable extent.

With the most profound respect for the judgment of my learned brethren, I must hold that our law is neither so venal nor so weak that it can not prevent a municipal corporation from playing the role of a highwayman.

It is insisted that the case of The St. Louis, Alton & Terre Haute R. R. Co. v. The City of Belleville, 122 Ill. 376, supports the judgment of the court and is like the case at bar.

Town of Rice v. C., B. & N. Ry. Co.

But I think the two cases are wholly unlike, both in fact and law. A careful examination of that case will show that there is no necessary conflict between that case and a long list of cases I have cited from the same court holding that municipal corporations may be and are estopped under circumstances like those disclosed in this record.

I am of opinion that the learned judge who tried the case below was correct in his judgment in holding the defendant not guilty, and that the judgment ought to be affirmed.

*On Petition for Rehearing.*

[Opinion filed May 29, 1889.]

*Per Curiam.* Opinion of a majority of the court.

A petition is presented to us for a rehearing in this case, and we have read the petition with the care which the importance of the questions involved requires, and have re-examined the grounds of the opinion of a majority of the court heretofore filed, in connection with the petition for a rehearing, and after a careful consideration of the same are of the opinion that the judgment of this court is correct, and that there are no probable grounds upon which to grant a rehearing. The attorney for the petitioner, the appellee herein, takes the broad ground, as we understand it, that the statute quoted in the original opinion of a majority of the court, under which the right to acquire the highway is claimed, gives it the absolute right to acquire the use of the entire road, to the exclusion of the public, by contract with the highway commissioners, or by condemnation, if such exclusive use is necessary for the proper enjoyment of the franchises of the appellee. As we said heretofore, we do not think such right was given or intended by the Legislature; that it only allowed a joint occupancy of the highway with the general public in such a manner as not to deprive the public of its reasonable use in common with the railroad. We are still firmly of that opinion. In P., Ft. W. & C. R. R. v. Reich, 101 Ill. 157, the words of the charter of such railroad in ref-

erence to the right of a railroad to occupy a public street, came under consideration, and it was there held that the words of its charter in prescribing its powers read: "To construct their railroad upon or across any stream of water, watercourse, road, highway, railroad or canal which the route of its road shall intersect, but the corporation shall restore the stream or watercourse, road or highway thus intersected to its former state or in a sufficient manner not to impair its usefulness," did not authorize an exclusive use of such stream, etc., by the railroad company, but only a joint use, and "could only be enjoyed in common with the use of the avenue by the public as an ordinary highway and without materially impairing its usefulness as such." "The commissioners of highways of the town of Lake had no title in this avenue and no authority whatever to barter or convey any interest therein," says the court. The above statute gave the railroad company, the court further says (*ibid*. 172), "express authority for laying tracks upon, as well as across streets or highways," etc. The statute quoted in the original opinion herein is in all essential particulars the same as the one last quoted. It is true one phrase is inserted that contains a word not in the act last above quoted. That is, "such a corporation shall restore the stream, watercourse, street, highway, plankroad and turnpike thus intersected or touched to its former state, or to such state as not *unnecessarily* to have impaired its usefulness, and keep such crossing in repair," etc. The word *unnecessarily* is used; that was not in the former act; and then it reads: "Not unnecessarily to have impaired its usefulness," etc. It is insisted by counsel for appellee that this qualifying word gives the railroad the right to acquire, by agreement or condemnation, the exclusive use of the highway, etc., if it is necessary for the purposes of the road. We do not concur in such an interpretation. It was no doubt thought by the Legislature that no canal, stream, street, highway, etc., could be occupied without in some measure being injured or impaired by the crossing or occupation of a railroad, but that it might be crossed and occupied without materially impairing their usefulness for the original use by the public. Hence, no doubt, by the use of the word "unnecessarily" it was intended

to compel the railroad so using a " public highway," etc., to
restore it to such a condition as not to impair in any degree
its usefulness to the public, if it could be done, but if it could
not, then as to such limited injury as was necessary the rail-
road would not be compelled, as the former act seemed to
imply, to restore the " highway, etc., in such a manner as not
to impair its usefulness " in any degree.  Any other interpre-
tation would lead to most astonishing and sweeping results.
It would give a railroad company, whenever it deemed it nec-
essary, the right to condemn and occupy any canal, watercourse,
highway or street in the entire State, to the absolute exclu-
sion of the public from its former or public use.  Can it be
supposed that the Legislature ever intended to give to rail-
road corporations such sweeping powers as to take for their
own use all the streets in the cities, all the roads and all the
rivers, if it were even necessary for their use, and at the same
time make them the judges?  It is absurd to so contend.
They are only allowed a joint use where such highways are
not materially impaired for public use.  As to the question of
estoppel, we need only refer in support of our ruling to Rail-
road Co. v. City of Belleville, 122 Ill. 376, and P., Ft. & C. R.
R. Co. v. Reich, 101 Ill. 157.  A rehearing is denied.

*Rehearing denied.*

C. B. SMITH, J.    I still adhere to my dissenting opinion, and
think the rehearing ought to be allowed, and in its support
further cite Bissell v. The Michigan Southern and Northern
Indiana Railroad Companies, 22 N. Y. 258, and the case of
Parish v. Wheeler, 22 N. Y. 494.   These cases are in harmony
and fully support the views I before expressed and the
authorities cited.