THE ST. LOUIS, ALTON AND TERRE HAUTE RAILROAD COMPANY

*v.*

THE CITY OF BELLEVILLE.

*Filed at Mt. Vernon June 20, 1887.*

1. STREETS—*vacating streets—by what authority—and of the mode.* A public street or alley in a city can be vacated or closed only by the city council, and by it only upon a three-fourths majority vote of all the alder-men authorized by law to be elected, to be taken by ayes and noes, and entered upon the record of the proceedings of the council or board.

2. So a railway company, relying upon a resolution of the common council of a city vacating or allowing the closing of a portion of a public street, must see that such resolution or order has been adopted by the required vote, and entered upon the record of the proceedings of such common council. If such company closes up or obstructs a street not legally vacated, it may be held liable for the obstruction.

3. SAME—*use of street by railway company—whether right exclusive, or jointly with the public.* Where the joint use of a public street is granted to a railway company with the public, and its right is not exclusive in any portion thereof, the company may be properly convicted of a breach of an ordinance against obstructing streets and their crossings by locomotives and cars.

4. An ordinance or resolution of a city appropriated certain streets to a railway company, "so far as the said company may require to appropriate the same in crossing them, in the construction of their railroad track, switches, turn-tables, etc., and other machinery and fixtures to be used or employed by them in operating their said road, subject, however, to this proviso: that the same shall be occupied with as little detriment and incon-venience to the public as possible," and requiring the crossings to be so graded as to make any embankments that should be made, no obstruction: *Held,* that this was but a provision for a joint use with the public having occasion to use the streets by other modes of travel.

5. ESTOPPEL—*how it may arise.* It is of the essence of an estoppel *in pais,* that the party having authority to act in the matter shall have knowingly done an act to influence the conduct of the other, and that the other must have acted on the faith of that act. A person having no author-ity to act, can not, by his conduct, estop others not responsible for his conduct.

6. A city will not be estopped by the acts or promises of a committee of the city council or the acts of the city attorney, such committee being known to have no power to do the act which is sought to be affected by estoppel.

7. SAME—*municipal corporation—estoppel by deed not accepted.* If a municipal corporation may be subject to the doctrine of equitable estoppel, it can not be estopped by a deed to it of land for a roadway or street which it has never accepted or authorized to be accepted.

8. So a deed of land to a municipal corporation, for public use as a street, without acceptance, confers no rights on the grantor and imposes no obligations or duties upon the grantee. Leaving such deed with a city attorney for the city does not give effect to the same, and he can not accept the same, on behalf of the city, by any act of his without the authority of the city council.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

This is an appeal from the judgment of the Appellate Court for the Fourth District, affirming a judgment of the circuit court of St. Clair county, convicting appellant of violating an ordinance of appellee, prohibiting owners of locomotives, cars, etc., to obstruct crossings, etc., of streets thereby. So much of the facts as is essential to an understanding of the case may be briefly stated, as follows:

The road of appellant runs in a direction north-west and south-east, across Abend's addition, crossing Richland, Spring and Illinois streets, which run north and south, and Sixth and Seventh streets, which run east and west. The railroad depot is located on Seventh South street, to the east of its junction with Spring street, and the appellant claims the right to the exclusive use of Spring street for its yards and necessary use. The appellant is successor of the Belleville and Illinoistown Railroad Company, and entitled to all its property, franchises, grants and privileges. The record shows that Spring street, and the next street west of the appellant upon Seventh street, was dedicated to the city of Belleville in 1849. In 1853, a resolution permitting the Belleville and Illinoistown Railroad Company to use certain streets of the city, was adopted by the city council, which reads as follows:

"*Resolved by the city council of the city of Belleville*, That the use of the following named streets in the city of Belleville, in Chandler and Abend's addition thereto, be and the same are hereby appropriated to the Belleville and Illinoistown Railroad Company, so far as the said company may require to appropriate the same in crossing them, in the construction of their railroad track, switches, turn-tables, and other machinery and fixtures necessary to be used or employed by them in operating said road,—namely, High, Illinois, Spring, Richland, Race, South, Fifth, Sixth and Seventh South streets, and such alleys in said Chandler and Abend's addition as are crossed by said railroad track: *Provided*, that the same shall be occupied with as little detriment and inconvenience to the public as possible; and if said railroad shall find it necessary in crossing any of said streets, to raise embankments across the same, the streets crossing said embanked streets shall be so graded as not to make their said embankments an obstruction to crossing the same."

Appellee introduced in evidence an ordinance prohibiting the obstruction of street crossings, etc., and appellant admitted on the trial, that it had obstructed Spring street before the commencement of the suit. Appellant claimed that that portion of Spring street within its yards had been vacated in 1852, and until that part of the addition to the city south of appellant's road had been considerably built upon, no controversy had arisen between it and the public concerning the use of Spring street. No action of the city council, entered of record, was introduced showing such vacation. It was also claimed by appellant, that several years before the commencement of the suit, the grounds south of the railroad having been fenced in, admitting of no passage from Spring street to Illinois street, complaints were made by persons who had acquired property and built houses south of the railroad, of the blocking of Spring street crossing by the railroad company, and the city council appointed a committee to confer with the railroad

·company and adjust the matter; that this committee met the officers of the company, and it was agreed that the railroad company should construct a roadway on its right of way for public use, from Spring street to Richland street, and should acquire property and open up a roadway from Spring to Illinois street, and build a sidewalk, so as to afford convenient access from both streets to Spring street, and that the railroad company should continue in the use of Spring street; that this was reported to the city council; that the railroad company made the roadway on its right of way, to Richland street, and purchased property and opened up a way to Illinois street, constructed the sidewalk, and the city took possession of the strip of land purchased by the railroad company, and improved and worked it as a street of the city; that the city afterward attempted to vacate so much of Spring street as was within the yards of the company, and published the ordinance as having been passed, sent a copy thereof to the railroad company, and the company executed a deed for the strip of land south of the railroad to the city, and delivered the same to James M. Hay, the then city attorney; that this deed the city attorney did not present to the city council, and it was subsequently lost; that the city having been sued for damages in regard to this crossing, the city attorney, Martin Schaefer, requested the company to execute another deed for this strip, which was done, and this deed, and the fact that the city had procured thereby other convenient access to this property to lot owners, was used by the city attorney as evidence in that suit.   But the deed, when laid before the city council, was not accepted by it, and a resolution was adopted by the city reciting that the ordinance vacating the street was not passed legally by the council, and that the present council refused to pass that or any similar ordinance, and the clerk was therefore ordered to return the deed to the railroad company. The deed was returned to the railroad company.

By agreement of parties, the cause was tried by the court without the intervention of a jury. Appellant asked the court to hold the following propositions of law, but the court refused, and appellant excepted:

"*First*—If the city, by its officers or agents, induced the defendant to expend money in making a roadway from Spring to Richland street on its right of way, for the use of the public, and to purchase land and open a way from Spring to Illinois street, upon the understanding and promise, expressed or implied, that the defendant, in consideration thereof, should have the right to use that portion of Spring street within its yards, for yard purposes, and said city took possession of the lands so purchased, and other lands of the company, in pursuance to said understanding, and worked and used the same as a street, then said city is estopped from recovering a penalty from defendant for using such portion of Spring street for yard purposes, and the court ought to find the defendant not guilty.

"*Second*—That the resolution or ordinance of the city council, of . . . . . , A. D. 1853, is a license to the defendant, if it is the successor of the railroad company therein named, to use that portion of Spring street within its yards, for yard purposes, and the city can not recover a penalty for using said street for such purposes, even if it obstructs the street there by such use, without first revoking said license, or giving the defendant notice that such use must be discontinued.

"*Third*—If the city accepted a deed from defendant for the strip of land mentioned in ordinance of city, of July 5, 1883, and used the same in defence of a suit brought against the city, and took possession of said strip of land, and worked the same as a street of the city, it is estopped from prosecuting defendant for a penalty."

Mr. R. A. Halbert, for the appellant:

The question here presented is not whether the railroad company can take possession of a portion of a street for a pri-

vate use, to the exclusion of the public, but whether it may use a portion of a street for a public use, and after it has laid out money at the instance of the city and its officers for such use, and the city has taken possession of and used, and still uses, property purchased for the use of the city, in order that it might so use the street, it can be prosecuted by the city for a penalty, under an ordinance which forbids the standing of cars upon the street, for any purpose, at any time.

In a proceeding to oust the company of its depot, the question would not so much be as to whether the city had the power to grant a street for depot grounds, but whether, after having induced the company to build its depot in the street, the city would not be estopped from asserting it had no power to do so.

The cases cited by the Appellate Court have no application to the real question. *Stack* v. *East St. Louis*, 85 Ill. 377, was a suit by an abutting owner to recover damages of the city, and not a suit by the city to recover a penalty. *Quincy* v. *Jones*, 76 Ill. 231, simply holds that the right to lateral support of adjacent soil is limited to the soil in its natural state. *Jacksonville* v. *Railway Co.* 67 Ill. 540, holds that the legislature can not grant the right to railroads to use property dedicated to the city for a public square. *Railroad Co.* v. *Reich*, 101 Ill. 158, was to test the right of a lot owner to recover damages for cutting access to his lot. In *Chicago Dock and Canal Co.* v. *Chicago*, 115 Ill. 115, it was held that the right to lay tracks in the street could be granted to the dock company, and that when laid and connected with railroads its use became public. The question of estoppel did not arise in either of those cases.

Mr. M. W. SCHAEFER, City Attorney, for the appellee:

The settled doctrine of our Supreme Court, according to all the late cases, is, that a city holds its streets, alleys and squares in trust for the public, and has no authority to convert or divert them for other uses, or grant to any one an exclusive right to

their use.   *City of Jacksonville* v. *Railway Co.* 67 Ill. 540 ; *City of Quincy* v. *Jones,* 76 id. 231 ; *Village of Princeville* v. *Auten,* 77 id. 325 ; *Stack* v. *City of East St. Louis,* 85 id. 379 ; *City of Morrison* v. *Hinkson,* 87 id. 587 ; *Railroad Co.* v. *Reich,* 101 id. 157 ; *City of Quincy* v. *Bull,* 106 id. 337 ; *Canal Co.* v. *Garrity,* 115 id. 155 ; *Parlin* v. *Mills,* 11 Bradw. 402 ; *Lee.* v. *Town of Mound Station,* 118 Ill. 304 ; Dillon on Mun. Corp. (2d ed.) sec. 581.

In permitting streets to be used for railroad purposes, the city has no right to obstruct the streets and deprive the public and adjacent owners of their use.   *Morrison* v. *Hinkson,* 87 Ill. 587 ; *Railroad Co.* v. *Reich,* 101 id. 157 ; *Canal Trustees* v. *Havens,* 11 id. 554 ; *Quincy* v. *Bull,* 106 id. 349.

This is an action at law, and estoppels *in pais* are available only in a court of equity.   *Stock Yards* v. *Ferry Co.* 102 Ill. 514 ; *Winslow* v. *Cooper,* 104 id. 235.

The cases cited by appellant sustain this principle.   *Logan County* v. *City of Lincoln,* 81 Ill. 156 ; *Martel* v. *East St. Louis,* 94 id. 67 ; *People* v. *Brown,* 67 id. 467.

The authorities cited by appellant all bear on the assumption that the city is seeking to entirely oust the company from any use of Spring street whatever, which is not the case.

The ordinance was not passed by the requisite vote.   The deed relied on as an estoppel was never delivered and accepted. The city attorney was not authorized to accept it.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court :

The only questions that we are at liberty to consider, are expressed in the three propositions in writing, presented by counsel for appellant to the circuit court, and asked to be held to be the law, for no question of law arose upon the trial in any other manner.

*First*—It is provided by section 1, chapter 145, of the Revised Statutes of 1874, that it shall require a three-fourths majority of all the aldermen of the city authorized by law to

be elected by such city, to vacate or close any street or alley, such vote to be taken by ayes and noes, and entered upon the record of the council or board. No other body or officers or persons have authority in the matter. The records are open to the inspection of the public, and it is incumbent on any one ·acting on the faith that a street or alley is closed, to know what is the fact, unless he shall be prevented by those having authority to act for the city, from obtaining such knowledge. .There is no evidence in this record tending to show that the railroad company was prevented by those having authority to act for the city, from learning whether this vacating ordinance was adopted by the requisite vote of aldermen. The railroad company is therefore presumed to have known that it was not so adopted, and hence that it was invalid and ineffective for any purpose.

The deed first made to the city was never accepted by the city council. Indeed, it was never presented to it, having been lost by the city attorney, in whose custody it was placed, and the second deed was expressly rejected by the city council. The city attorney had no authority to accept·the deed, and any use he made of it, not having been by the authority of the city council, is immaterial. It is of the essence of an estoppel *in pais* that the party having authority to act in the matter, shall have knowingly done an act to influence the conduct of the other, and that the other must have acted on the faith of that act. *Davidson* v. *Young,* 38 Ill. 145; *Schnell* v. *City of Chicago,* id. 382; Bigelow on Estoppel, 480.

No one pretends that a person having no authority to do an act can, by his conduct, estop others not responsible for his acts; and so here, no reason is shown why any reliance should have been placed by the railroad company upon the acts or promises of a committee of the council, which was known to have no power itself to vacate streets, or upon the conduct of the city attorney, who was known to be equally destitute of such authority. Even then, if the case is one wherein the

doctrine of equitable estoppel might be applied, which is not conceded, the first proposition asked is clearly erroneous as applied to the facts, and the court properly refused to hold it.

*Second*—The ordinance of 1853 does not assume to license an exclusive occupancy of the street. It only assumes to authorize the railroad company to use the streets named, "so far as the said company may require to appropriate the same in crossing them, in the construction of their railroad track, switches, turn-tables, etc., and other machinery and fixtures to be used or employed by them in operating their said road, subject, however, to this *proviso:* 'That the same shall be occupied with as little detriment and inconvenience to the public as possible, and if said railroad company shall find it necessary, in crossing any of said streets, to raise embankments across the same, the streets crossing said embankments shall be so graded as not to make their said embankments an obstruction to crossing the same.'" This is but a provision for a joint use with that portion of the public having occasion to use the streets, adopting other modes of travel. (*Pittsburg, Fort Wayne and Chicago Railroad Co.* v. *Reich,* 101 Ill. 157.) And the streets being open still for general public use, the ordinance prohibiting their obstruction is within the municipal power. *Illinois Central Railroad Co.* v. *Galena,* 40 Ill. 344; *Toledo, Peoria and Warsaw Railway Co.* v. *Town of Chenoa,* 43 id. 209.

*Third*—The facts clearly show, and there is no evidence tending to show otherwise, that the city did not accept the deed of appellant, as assumed in this proposition. The first proposition not being maintainable, there is no ground whatever upon which this can rest.

The legal principles enunciated in the opinion of the Appellate Court, (*St. Louis, Alton and Terre Haute Railroad Co.* v. *City of Belleville,* 20 Bradw. 580,) as well as the judgment rendered by that court, have our concurrence.

The judgment is affirmed.         *Judgment affirmed.*