Statement of Facts.

## PHILADELPHIA ET AL. v. RIVER FRONT R. CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 14, 1890—Decided March 10, 1890.
[To be reported.]

1. In construing a writing, a word, not plainly inserted by accident or mistake, is never to be thrown out entirely, when there is a plain and natural construction which can be given to it, not manifestly destructive of the general intent of the sentence in which it occurs.

(a) A city by ordinance consented to the construction by a company of a single track railroad along a street, stipulating that suitable turn-outs to and into warehouses, etc., should be constructed, when requested by their owners. Property owners filed a bill to restrain the construction of the road.

(b) By consent, a decree was made reciting an agreement between the parties that the railroad company should build "a single track only, without sidings for standing or passing trains," and should at no time "construct any such switches or turn-outs," and enjoining the company from violating the terms of the agreement.

(c) The company constructed a single track in accordance with the agreement. Some years after, at the request of the owners of a warehouse, a turn-out connecting the main track with their warehouse was constructed, whereupon the court attached the officers of the company for contempt, and ordered the removal of the turn-out:

2. The words, "switches or turn-outs," as used in the agreement and the decree founded thereon, were the equivalent of "sidings," and the words, "such switches or turn-outs," meant therein sidings for standing or passing trains; wherefore, the construction of the turn-out to connect with the warehouse was not a violation of the agreement.

3. Even if it were in violation of the decree, the court could not order the removal of the turn-out, without making the owner of the warehouse a party to the proceeding; whether the thing itself was constructed and owned by him or by the railroad company, he had a sufficient interest in its use to entitle him to notice and a hearing.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 7 July Term 1889, Sup. Ct.; court below, No. 411 June Term 1877, C. P. No. 2, in Equity.

On June 4, 1877, the city of Philadelphia, trustee under

Statement of Facts.

the will of Stephen Girard, deceased, J. Wheaton Smith et al., trustees, and other owners of land fronting on Delaware avenue, between Vine and Walnut streets, Philadelphia, filed a bill in equity against the River Front Railroad Company, averring that the defendant company was incorporated in 1876, under the general railroad act of April 4, 1868, P. L. 62, and empowered by its letters patent to construct, maintain and operate a railroad between certain points in Philadelphia, by such route as the councils of said city should approve; that by an ordinance approved May 31, 1877, said councils authorized the defendant company " to occupy with a single track railroad for ordinary railroad purposes and uses, with suitable and necessary turn-outs into and upon the warehouses and wharves located thereon (when said turn-outs are requested by the owners of said warehouses and wharves), so much of Delaware avenue as lies between Dock street and the south side of Callowhill street:" that said Delaware avenue was not a highway over which the commonwealth or the said city had any power to grant such a franchise, without making compensation to the trustees under the will of Stephen Girard, deceased, and to the other plaintiffs, in that it had never been made a highway by process of law or by plenary dedication, but had been opened at private expense for certain specified purposes; that, under said ordinance, the defendant was about to construct on said avenue railroad tracks such as would be an obstruction to its use for the purposes for which it was opened as aforesaid; and praying that the construction, maintenance and operation of said railroad on Delaware Avenue between Dock and Vine streets be enjoined.

No answer was filed to this bill, but by agreement of the parties the court entered the following decree:

" And now, to wit, March 30, 1878, this cause coming on to be heard by counsel, and it appearing to the court that the parties plaintiff and defendant have agreed as follows, that is to say: That the said defendants will lay down on Delaware avenue, between Vine street and Walnut street, in the city of Philadelphia, a single track only, without sidings for standing or passing trains, the rails to be of a pattern, and to be so laid that they shall offer no greater obstruction than those now laid on the said avenue south of Dock street, and that the said de-

Statement of Facts.

fendants will at no time lay down or construct any such switches or turn-outs between said points. . . . .

"Upon motion of the several solicitors for the said parties plaintiff and defendant, praying that the said agreement be made an order of this court, it is decreed that the said agreement be and is hereby made an order of this court to be observed and performed by the parties thereto, according to the tenor and true meaning thereof, and that the prayer of the plaintiffs in their bill filed for an injunction against the defendants to restrain them from constructing, maintaining, and operating their said railroad from the point of connection with the Pennsylvania Railroad at Delaware avenue and Dock street to Vine street, be and the same is hereby refused; and in lieu thereof the defendants, their workmen and employees and agents, are perpetually enjoined and restrained from violating in any manner the aforesaid agreement and order of this court."

A single track railroad was thereafter constructed, and was in operation from 1881.

On January 22, 1889, the city of Philadelphia, trustee under the will of Stephen Girard, presented its petition setting out the decree aforesaid, and averring that in violation thereof and in contempt of the injunction thereby awarded, the defendant had. constructed upon Delaware avenue a curved siding connecting its single track, laid upon said avenue, with the premises Nos. 50 and 52 North Delaware avenue, and that said curved siding was a dangerous obstruction to travel upon said avenue; praying for a rule upon the defendant to show cause why its officers and agents should not be attached for contempt in thus violating said decree, why the said siding should not be removed, and for general relief.

To this petition the defendant filed an answer setting out the ordinance aforesaid, and averring that Messrs. Crowell & Class, on October 29, 1888, being the owners of warehouse Nos. 50 and 52 Delaware avenue, did request a turn-out in accordance with the ordinance aforesaid, and did, on said day, receive a permit from the department of highways to remove the street pavement at said locality to lay a track into their warehouse from the track of this respondent at that point, and this is the turn-out referred to in the petition; that said turn-out was a lawful structure, not in conflict with the agreement

Arguments.

embodied in the decree referred to in the petition, said agreement manifestly not applying to a turn-out at the request of and by the owner of a warehouse; and the defendant was without authority of law to make an agreement so applying.

After argument, the court, without opinion filed, made a decree directing that the attachment prayed for be issued, and ordering that the siding be removed within thirty days, and that the defendant pay the costs of the proceeding.

Thereupon the defendant took this appeal specifying that the court erred:

1. In awarding the attachment.

2. In ordering the removal of the siding.

*Mr. David W. Sellers,* for the appellant:

1. The whole issue is one of pure verbal interpretation of the decree entered by consent. The decree says that the defendant shall lay a single track only, without "sidings for standing or passing trains," and shall at no time construct "any such switch or turn-out;" that is, no switch or turn-out on which trains shall stand or pass. The error of the court below is in disregarding these qualifying words. The word, "such," restricts the prohibition to the construction of sidings for standing or passing trains, and of course no others are prohibited.

2. The construction given the agreement by the court below is in conflict with the ordinance expressly providing for the construction of turn-outs into warehouses, etc., at the request of the owners thereof. Although the authority to make a turn-out is dependent upon the consent of the railroad company: Heyl v. Railroad Co., 51 Pa. 469; yet this condition in the ordinance is valid: Frankford etc. Ry. Co. v. Philadelphia, 17 W. N. 245, and the compromise agreement should have been assumed as not intended to conflict with it.

3. Even if the siding was in breach of the agreement and decree, the rights of Crowell & Class could not be disposed of summarily, and the order to remove the siding would not protect the defendant as against them, because they were not parties. The original decree does not settle the averments in the bill, upon which no issue was ever made. If the compromise agreement had been made without filing the bill, the remedy for its violation would have been in damages, and the

rights of the public would not have been affected by it. Its effect is not different because it was embodied in the decree.

*Mr. John G. Johnson* and *Mr. F. Carroll Brewster* (with them *Mr. Francis E. Brewster*), for the appellees:

1. That the original bill could have been successfully maintained is clear, under Philadelphia v. Pass. Ry. Co., 4 Brewst. 23; and, that the compromise of the litigation is now binding upon the defendant, can scarcely be questioned. The assertion that it could not lawfully enter into the agreement, cannot at this late day be seriously considered. By entering into the compromise the defendant waived the right to lay turn-outs into and upon warehouses and wharves, which it claimed under the ordinance of councils. The court below correctly interpreted the decree. The terms siding and turn-out are synonymous, both as defined in dictionaries and as popularly used. It is immaterial whether the siding runs parallel with the main track, or whether it is curved, as in this case. The original decree first uses the word siding, and later expresses the same thought by prohibiting the construction of switches or turn-outs.

2. The word "such" in connection with "switches or turn-outs" is unnecessary and meaningless. Switches had not been mentioned in any prior part of the decree, nor had turn-outs, under that name. The proper reading of the decree is that no switches or turn-outs are to be constructed between the points named. If we can give a meaning to "such," it can be only that such switches or turn-outs as will permit the standing or passing of trains, shall not be constructed. Like a main track, a turn-out can be used only by standing or passing trains. It cannot be supposed that the restriction was aimed at the improbable use of Delaware avenue for sidings parallel with the main track; the only real risk the complainants ran was that the license given by the ordinance to construct turn-outs might be acted upon. If the argument of the appellant be sound, the compromise gave them nothing.

3. The defendant's siding is connected with the main track by a switch, which is defined by Webster to be the movable part of two opposite rails for transferring a car from one track to another. The switch is clearly prohibited by the decree,

Opinion of the Court.

even if the siding be not, and the latter is useless without the former. The petition for the attachment avers that the siding and switch are obstructions to travel and their use dangerous, and this allegation is not denied by the answer. The nuisance is equally great, by whatever name the additional track be called, whether siding, turn-out or switch. Indeed, this curved turn-out is even more objectionable than a straight siding. The attempt to introduce the supposed rights of the owners of the warehouse, cannot avail the defendant. They were not made parties, because they had no standing. They may have requested the construction of the siding, but under the pleadings it must be taken as admitted that the defendant constructed it.

OPINION, MR. JUSTICE MITCHELL:

Though this case arises upon a litigation of much wider scope, yet the present controversy turns on the construction of a single sentence in the agreement between the parties, which was by consent made a decree of the court in the original suit. It was thereby stipulated that the railroad company " will lay down on Delaware avenue, between Vine street and Walnut street, a single track only, without sidings for standing or passing trains, . . . . . and that the said defendants will at no time lay down or construct any such switches or turn-outs between said points," etc. The words, sidings, switches, and turn-outs, in relation to railroads, are of course of modern growth, and, not only in popular use, but in the dictionaries, are treated as to some extent interchangeable. Thus, the only definition that Webster gives of siding is " the turn-out of a railroad," (noted as English,) and turn-out is defined as " a short side track on a railroad which may be occupied by one train while another is passing on a main track; a siding." But, even without the authority of the dictionaries to sustain them, we think it quite clear that the parties to this agreement meant to use the words as equivalents. The appellants are to lay down " a single track only, without sidings for standing or passing trains," and they are at no time to construct " any *such* switches or turn-outs." " Such" grammatically refers to an antecedent, and, if "switches or turn-outs" do not here refer to the "sidings" before mentioned, then there is no antecedent, and we must treat the

Opinion of the Court.

word, such, as used ungrammatically, or throw it out alto-
gether, as surplusage. To this last resort, in fact, the appel-
lee's argument is driven. But a word not plainly inserted by
accident or mistake is never to be thrown out entirely, while
there is a plain and natural construction which can be given
to it, not manifestly destructive of the general intent of the
sentence. The general intent of this agreement is not at all
doubtful. It is to limit the railroad company to a single track,
and the provision that it shall be without sidings for standing
or passing trains is intended to enforce that limitation, and to
secure the street from such occupation as might amount prac-
tically to a double track. This done, the present action of the
railroad is conformed to the intent of the parties, and there the
stipulation on the subject might have ended; but, to secure the
future, the agreement goes on to say: And the defendants
" will at no time lay down or construct "—what ?—" any *such*
switches or turn-outs." That is, the company will not in the
future lay down any such additions to their single track, as
they have agreed not to do now, to wit, sidings for standing or
passing trains, which shall in effect double their single track.

This, we think, is the plain general intent of the agreement,
and the natural meaning of the language used to express it.
It does not, therefore, seem to require further discussion.
But, if we look at the other writings in the case, and particu-
larly at the ordinance under which the railroad was construct-
ed, not for the purpose of entering into the consideration of any
of the questions raised by the original litigation and settled by
the agreement, but merely as illustrative of the situation of
the parties and the subject matter before them, we find our
view strongly confirmed. The ordinance by which the city of
Philadelphia gave its consent to the building of the railroad
authorizes the construction of " a single track railroad for ordi-
nary railroad purposes and uses, with suitable and necessary
turn-outs into and upon the warehouses and wharves." Part
of the consideration to the city for permitting the occupation
of its streets is thus shown to be the facilitation of business by
such railroad connections with the warehouses and wharves ;
and this purpose is expressed still more explicitly in the sec-
ond section, relating to the railroad on Delaware avenue north
of Callowhill street, etc., in which it is stipulated that all sid-

Opinion of the Court.

ings and turn-outs shall be free to both the River Front and the Reading railroads, "so that all manufacturers' and business interests along the said line shall have the full benefit of receiving from and delivering property to said roads." Whether the appellant could enter into any agreement which would deprive the business on Delaware avenue of this convenience, which was part of the consideration for which the city granted the permission to build the railroad at all, we are not required to consider; but the fact that the appellant was under obligation to the city to preserve such business rights, is an additional reason for not straining the language of the agreement into an abandonment of them, when the natural meaning does not call for such construction. We are of opinion, therefore, that the making of the turn-out in controversy was not a violation of the agreement, or the decree founded thereon.

The view we have taken renders it unnecessary to consider the other questions involved, but we may say that, as the case is now presented, it was an error to order the removal of the turn-out without making the owners of the premises parties to the proceeding. The answer avers that the owners, Messrs. Crowell and Class, requested a turn-out in accordance with the ordinance aforesaid, and obtained a permit from the Department of Highways to remove the street pavement, and lay a track into their warehouse from the track of respondent, and that this is the turn-out in question. It is, perhaps, not entirely clear from this answer whether the turn-out was actually constructed by, and was the property of Crowell & Class, or the railroad; but, in either aspect, Crowell & Class had an interest in its maintenance, if not a property in the thing itself, and could not be deprived of either without notice and a hearing.

> Orders reversed, and record remitted for dismissal of the petition, with costs.