[L. A. No. 4691. In Bank.—February 17, 1920.]

## SIMONS BRICK COMPANY (a Corporation), et al., Appellants, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[1] RAILROADS—FRANCHISE FOR CONSTRUCTION OF ROAD—INDUSTRIAL SPUR-TRACK NOT PERMITTED—CONSTRUCTION OF COUNTY ORDINANCE. An ordinance of a county board of supervisors granting a franchise to an electric railway company to construct, maintain, and operate a single or double track railway over and along the public highways of the county does not authorize the construction and maintenance of an industrial spur-track where the only adjuncts to the main line expressly permitted by the franchise are "turn-outs" and "switches."

[2] CORPORATIONS—PRIVILEGES NOT INCIDENT OF FRANCHISE—SUPERIORITY TO PUBLIC RIGHTS—RULE.—Corporate privileges, which are not ordinarily and necessarily an incident of the corporate franchise, can be held to prevail over public rights only when it plainly and explicitly appears that such privileges have been, in fact, granted.

[3] RAILROADS — ROADS — SPUR-TRACKS NOT INCLUDED—CONSTRUCTION OF CODE.—Spur-tracks constructed and used in connection with the business of individual shippers, and constructed long after the road is built and in operation, are not such component parts of the corporation's road, however few or many tracks the road may have, as to be included within the meaning of the word "roads," as used in subdivision 5 of section 465 of the Civil Code, but they are rather appendages or adjuncts.

[4] ID.—ACQUIESCENCE IN CONSTRUCTION AND MAINTENANCE OF SPUR-TRACK—ABSENCE OF ESTOPPEL.—Acquiescence in the construction and maintenance of an industrial spur-track on a city street, which the railroad had no right to construct, cannot estop the city of its right to deny the right of the company to maintain the track, since the doctrine of estoppel cannot be applied so as to validate, as against the public, grants in excess of the limited powers conferred upon the public agents who assumed to make them.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

Estoppel of municipality to deny validity of franchise, note, **Ann. Cas.** 1916B, 1272.

Frank Karr, R. C. Gortner, W. R. Millar and Kenton A. Miller for Appellants.

Albert Lee Stephens, City Attorney, Charles S. Burnell, Assistant City Attorney, and Wm. P. Mealey, Deputy City Attorney, for Respondent.

LENNON, J.—Plaintiffs seek to enjoin the city of Los Angeles from removing a certain industrial spur-track maintained by the plaintiff railway company as a part of its electric railway system on Santa Monica Boulevard in the city of Los Angeles. This spur-track serves the manufacturing plant of the plaintiff brick company, which is situated on property adjacent to Santa Monica Boulevard. The trial court denied plaintiffs' application for an injunction *pendente lite,* set aside a temporary restraining order which had been previously granted, sustained a demurrer to the complaint without leave to amend, and entered judgment for defendant. Plaintiffs thereupon prosecuted this appeal.

Defendant seeks to support the judgment and order of the trial court upon the ground that there has at no time existed any legal authority for the building and maintenance of the spur-track in question.

The spur-track was constructed in June, 1909, in what was, at that time, unincorporated territory of the county of Los Angeles. It is claimed that the said spur-track was built pursuant to the terms of an ordinance of the Los Angeles County board of supervisors granting a franchise to the predecessor of plaintiff railway company, which provided "that the right of way be, and the same is hereby granted to E. P. Clark, and his assigns, over and along the public highways of the county of Los Angeles in this ordinance named [including Santa Monica Boulevard] for the period of fifty years from and after the passage hereof, for the purpose of constructing, maintaining and operating a single or double track railway thereon, for passengers, freight, United States mail and baggage; . . . together with the right to construct all switches, turnouts, power houses and other appliances, properties, structures and attachments that may be necessary for the purpose of operating said road and enabling it to be as efficient as the best electric roads."

It is contended, on behalf of defendant, that the words of this ordinance are not adequate to authorize the construc-

tion and maintenance of the spur-track here in question. [1] This contention must be sustained. [2] No principle of law is better settled than that corporate privileges, which are not ordinarily and necessarily an incident of the corporate·franchise, can be held to prevail over public rights only when it plainly and explicitly appears that such privileges have been, in fact, granted. (*Helena Water Works Co.* v. *Helena,* 195 U. S. 383, [49 L. Ed. 245, 25 Sup. Ct. Rep. 40, see, also, Rose's U. S. Notes]; *Indianapolis etc. Ry. Co.* v. *Citizens' St. Ry. Co.,* 127 Ind. 369, 24 N. E. 1054, 1062; *Capital City Light etc. Co.* v. *City of Tallahassee,* 42 Fla. 462, [28 South. 810].) The language of the franchise in question here does not, in terms, nor by any fair implication, contemplate and confer the authority to construct and maintain an industrial or any other spur-track by the railroad company. With reference to trackage facilities, the only adjuncts to the main line expressly permitted by the franchise are "turnouts" and "switches." As ordinarily understood and employed, the words "turnouts" and "switches" are in a measure interchangeable. In railroad parlance a "switch" consists of "two parallel lengths of rails joined together by rods, pivoted at one end, and free to move at the other end, forming a part of the track at its junction with a branch or siding. . . . Such a switch may be used to connect several lines of rails." (Century Dictionary). A "turnout" is a short side-track—a siding, having connection with the main-line track, upon which one train may be switched to permit another train to pass on the main-line track. (Century Dictionary; *City of Philadelphia* v. *River Front Co.,* 133 Pa. 134, [19 Atl. 356]; *Borough of Bridgewater* v. *Beaver etc. Co.,* 214 Pa. 343, [63 Atl. 796]; *Erie R. Co.* v. *Steward,* 61 App. Div. 480, [70 N. Y. Supp. 698].) Clearly, therefore, the "turnouts" and "switches" permitted by the franchise in question are no more than the customary short tracks which are usually resorted to for the purpose of enabling and facilitating main-line train movement. On the other hand, a spur-track is "a short track leading from a line of railway, and connected with it at one end only" (Century Dictionary), and may be said, as a matter of common knowledge, to be a track which is projected and extended laterally or at an angle to the main line and is not an adjunct usual or necessary to the primary

operation of main-line trains and cars. Obviously, therefore, a spur-track is distinctly different in its purpose and use from a "turnout" or a "switch." A reading of the franchise in question fails utterly to reveal any other words or phrases which may be said to contemplate and grant the authority to construct an industrial spur-track, and, in the absence thereof, it must be held that it was not the intention of the board of supervisors, nor the purpose and effect of the franchise, to grant, without more ado, the right to construct industrial spur-tracks.

It is contended, however, upon behalf of appellants, that, apart from and without regard to the terms of the franchise in question, authority to construct and maintain the spur-track in question is to be found in the provisions of sections 465 and 470 of the Civil Code, and that, in any event, in the face of the facts pleaded in the complaint the city is estopped from interfering with the maintenance of the said spur-track. Upon this phase of the case we are in accord with the discussion and disposition of it by Mr. Justice Sloane, of the second division of the district court of appeal for the second district, and therefore adopt his opinion and conclusions as the opinion of this court, which are as follows:

" . . . we are satisfied, under the decisions of the supreme court, that this case turns upon the construction of subdivisions 4 and 5 of section 465 of the Civil Code, and upon the meaning of the words 'road' and 'roads,' as used in these subdivisions; and that, in the absence of express legislative authority enlarging the powers of the governing authority of a city or county in this regard, section 465 defines and limits the easement that may be permitted to railroad corporations in the use of a public highway.

"Under section 465 of the Civil Code, subdivision 5, it is provided that: 'Every railroad corporation has power . . . to construct their roads across, along or upon any . . . street, avenue or highway . . . which the route of its road intersects, crosses or runs along.' This provision, however, must be considered in connection with subdivision 4 of the same section, in determining the meaning of the word 'roads' as here used. Under subdivision 4—as it read at the time the track involved here was laid—it is provided that 'every railroad corporation has power . . . to lay out its road, not exceeding ten rods wide, and to construct and maintain the same,

with one or more tracks, and with such appendages and adjuncts as may be necessary for the convenient use of the same.' Subdivision 4 clearly refers to the laying out of the railroad over and upon its right of way wherever located. Subdivision 5 refers to the specific location and privileges of a right of way over streets, avenues, highways, or other localities enumerated in such subdivision; and by the omission of the words relating to 'appendages' and 'adjuncts,' appears to limit the term 'roads,' as there used, to the main tracks of the railway. In *Los Angeles* v. *Southern Pacific R. R. Co.,* 157 Cal. 363, [108 Pac. 65], the supreme court clearly lays down the limitation of the use of highways by railroad corporations, in the absence of other express legislative authority, to the privileges set out in subdivision 5 of section 465 of the Civil Code; and also limits the application of such use to the construction and maintenance of the spur-tracks constituting the main lines of the railway.

"The case just cited is one in which the city of Los Angeles sought to eject the Southern Pacific Railroad Company from the possession of a portion of Alhambra Street, in said city. The railroad company, in addition to the two main through tracks of its railway, had constructed and was maintaining a third track over a portion of said avenue, which connected with the grounds used for its shops, and was also used for a side-track. It was the right to maintain this third track that was in dispute. The railroad constructed these tracks under an ordinance of the city of Los Angeles purporting to set apart to the unreserved and unrestricted use of the Southern Pacific Railroad Company all of the street in question. It is held in the opinion that this ordinance is effective to the extent that the city had power to grant the use of the street for railroad purposes. The court in this connection says: 'Admittedly the city council at that time had only such power in this regard as had been conferred upon them by the legislature of the state. Their authority to grant such a use of the street by the railroad company as includes the maintenance of this third track must be found, so far as we have been able to ascertain, in sections 465 and 470 of the Civil Code, as the same stood at the time of the adoption of this ordinance. . . . At the time of the adoption of this ordinance the only legislative authorization of the use of a public street for railroad purposes

was in subdivision 5 of section 465 of the Civil Code, the section enumerating the powers of railroad corporations. . . . This subdivision was part of the original code, and has never been amended. It is to be observed that this provision is limited to the "road" of a railroad corporation; in other words, that it grants to a railroad corporation the right to use a street, avenue or highway only as a place for its "road." Nothing is said therein, as in the next preceding subdivision, to which we will refer later, about "such appendages and adjuncts as may be necessary for the convenient use of the same." This, as we have said, was the only purported legislative authorization of the use of any street for railroad purposes. Section 470 of the Civil Code, as it then and has ever since stood, providing that "no railroad corporation must use any street, alley, or highway, or any of the land or water, within any incorporated city or town, unless the right to so use the same is granted by a two-third vote of the town or city authority from which the right must emanate," is simply a limitation upon such authorization, making such a grant by the town or city authority a condition precedent to the exercise of the power given by the legislature so far as streets in incorporated cities or towns were concerned. (See *Arcata* v. *Arcata etc. R. R. Co.,* 92 Cal. 645, [28 Pac. 676].) . . . The city council of Los Angeles was limited, therefore, to a grant of the right described in said subdivision 5 of section 465 of the Civil Code, and in so far as the ordinance exceeded this, it was without legislative authority and ineffectual to give the railroad company any rights. The power given by that subdivision was simply "to construct their *roads* across, along or upon" a street or highway. What was meant by the term "roads" as therein used? We think it must be held to have meant the single or double track road referred to in subdivision 4 of the same section as it stood at that time. . . . Doubtless the words "and with such appendages and adjuncts," etc., as used in this subdivision, include necessary side-tracks, but this subdivision is not one dealing with the right to use a street or highway. When we come to that subdivision (subd. 5), we find that right limited to the "road." . . . The omission of any reference thereto [to appendages and adjuncts] in the subdivision relative to the use of public highways shows the intention to confine such use to the road

itself, consisting of not exceeding two tracks.' As applied to the case at bar, this decision of the supreme court plainly limits the rights of the plaintiffs under the provisions of section 465 of the Civil Code to use the street for the main tracks of their railway line, without the 'adjuncts and appendages' referred to in subdivision 4.

"Counsel for appellants seek to distinguish the conditions as shown in *City of Los Angeles* v. *Southern Pacific R. R. Co., supra*, from the case at bar for the reason that at the time of the construction of the contested work in the case cited subdivision 4 of section 465 empowered the railroad corporation to construct and maintain its road 'with single or double tracks'; whereas, at the time of the construction of the spur-track here in controversy subdivision 4 had been amended to empower the construction of a road 'with one or more tracks.' We do not understand the decision above cited to rest upon the question as to the number of tracks of which the 'road' might consist, but upon the proposition that a side-track or turnout is not one of the tracks of the road, but an 'adjunct' or 'appendage' for the 'convenient use' of the road. [3] We think it clear that 'spur-tracks' constructed and used in connection with the business of individual shippers, and, as in this case, constructed long after the road is built and in operation, are not such component parts of the corporation's 'road,' however few or many tracks the road may have, as to be included within the meaning of the word 'roads,' as used in subdivision 5 of section 465. Rather, they are 'appendages' or 'adjuncts,' and as such appellants refer to them in their brief.

"In *Arcata* v. *Arcata etc. R. R. Co.*, 92 Cal. 639, [28 Pac. 676], so much relied upon by the learned counsel for appellants, the interpretation of the terms of section 465 of the Civil Code as to what constitutes the 'roads' which a railroad may build in a public highway was not discussed. In so far as the matter is referred to at all, the word 'road,' as used in section 468 of the same chapter, is held to apply only to the 'main road provided for in the company's articles of incorporation'; and the switch or side-track under consideration is referred to as 'a mere convenience in the operation of the road,' and as no more a part of the work referred to in the section 'than the site for a depot or landing place in a street of the town would be.' The amend-

ment of 1907, permitting, under section 465, 'one or more tracks' instead of a 'single or double track,' does not change the meaning of the word 'road' as there used. It still refers to the main line of the road proper.

"Appellants strongly protest against any such interpretation of this code section, asserting that, because spur-tracks such as here involved are an essential part of every railroad system, the right to construct them in public highways should not be questioned. Of even greater necessity to the proper equipment of a railroad system are the stations, depots, and roundhouses, which are the 'appendages' and 'adjuncts' of every modern railroad, and yet no one would seriously look to subdivision 5 of section 465 of the Civil Code for authority to use the roads of a county for such purposes. . . .

[4] "Appellants make the further point that the city of Los Angeles is estopped to deny the right of the plaintiff railway company to maintain this spur-track. Attention is called to the fact as shown by the record that the spur-track was constructed and put in operation in June, 1909; that it came within the city limits by annexation of the locality in which it was situated in October of that year, and has been maintained and operated ever since, until September 1, 1911, without protest or interference; that the plaintiff Simons Brick Company, in reliance upon the maintenance of this spur, has built up an extensive business dependent on the spur-track for its service; and that expensive improvements have been made by the plaintiffs, at the instance of the city, to conform the spur-track to the paving and grading requirements of the city on Santa Monica Boulevard. In fact, a strong showing is made for the application of the equitable doctrine of estoppel, if the city of Los Angeles and the public interests concerned are in a position to be subject to estoppel by conduct and acquiescence. But, as is said in *Gardella* v. *County of Amador*, 164 Cal. 555, [129 Pac. 993]: 'The doctrine of estoppel cannot, we think, be applied so as to validate, as against the public, grants in excess of the limited powers conferred upon the public agents who assumed to make them.' If the right to an easement on Santa Monica Boulevard arises solely from the provisions of the Civil Code, subject only to its ratification by the city of Los Angeles, then the city is without power to extend

the rights of plaintiffs either by its positive act or passive acquiescence. If it is subject to power vested in the city under section 2 of its charter, for permitting the construction of spur or side tracks, then it would be subject to revocation under the proviso of the same section that all permits granted thereunder 'shall be revocable at the pleasure of the council.' In either event, whether the city was without power by direct action to authorize the building of this spur, or, having the power, was privileged at any time to revoke its consent, we do not see how it could be held by estoppel to an obligation which it could not assume by express agreement, or which, if assumed, it could revoke at its pleasure. (*Detroit* v. *Detroit City R. R. Co.*, 56 Fed. 867; *St. Louis A. & T. H. R. R. Co.* v. *Belleville*, 122 Ill. 376, [12 N. E. 680]; *Ashland* v. *Chicago etc. R. R. Co.*, 105 Wis. 398, [80 N. W. 1101]; *Sutro* v. *Pettit*, 74 Cal. 336, [5 Am. St. Rep. 442, 16 Pac. 7]; *City Railroad Co.* v. *Citizens' St. R. R. Co.*, 166 U. S. 566, [41 L. Ed. 1114, 17 Sup. Ct. Rep. 653, see, also, Rose's U. S. Notes].)

"The facts as set out in the pleadings do not entitle plaintiffs to the relief demanded."

The order and judgment appealed from are affirmed.

Wilbur, J., Shaw, J., Angellotti, C. J., Olney, J., Lawlor, J., and Kerrigan, J., *pro tem.*, concurred.