THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

HENRY CRAWFORD.

*Opinion filed November 1, 1897—Rehearing denied December 14, 1897.*

1. RAILROADS—*running train at speed prohibited by ordinance—statute construed.* Section 24 of the Railroad act of 1874, (Rev. Stat. 1874, p. 811,) which authorizes a recovery against a railroad company for injuries to person or property from trains running through incorporated cities, towns or villages at a rate of speed prohibited by ordinance, does not limit the right of recovery to cases of actual collision with trains.

2. SAME—*liability for consequential injuries resulting from frightening animals.* Section 24 of the Railroad act of 1874 authorizes a recovery against a railroad company for injuries received by a person at a railroad crossing in an incorporated city, town or village from the frightening of his team by such company's negligence in running a train through the corporate limits at a rate of speed prohibited by ordinance.

*Illinois Central R. R. Co.* v. *Crawford,* 68 Ill. App. 355, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

H. M. SNAPP, and C. V. GWIN, for appellant.

COWING & YOUNG, (BENJAMIN OLIN, of counsel,) for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an action brought by Henry Crawford to recover damages for injuries received at the crossing of the Illinois Central railroad and Corning avenue, in the village of Peotone. The declaration contained six counts. In the third count it was alleged, in substance, that the defendant ran a freight train through the village of Peotone at thirty miles an hour, in violation of an ordinance of the village limiting the speed of trains to ten miles

an hour; that plaintiff was crossing the Corning avenue crossing in a buggy, and that said train caused the horse of plaintiff to sheer off and plaintiff to be thrown from the buggy, whereby his shoulder was broken. The sixth count set out the ordinance limiting the speed of trains to ten miles an hour; alleged a violation of the ordinance by the defendant, and that in his efforts to avoid being struck by the train plaintiff's buggy was overturned and plaintiff injured. On a trial before a jury a verdict was returned in favor of plaintiff for $1500. The court entered judgment on the verdict, and on appeal to the Appellate Court the judgment was affirmed.

On the trial the plaintiff introduced in evidence, over the objection of the defendant, an ordinance of the village of Peotone limiting the speed of trains through the village to ten miles an hour. The circuit court refused to exclude the ordinance from the jury, and refused to instruct the jury to disregard the ordinance and to find the defendant not guilty under the third and sixth counts of the declaration, and this ruling is relied upon as error.

Section 24 of "An act in relation to fencing and operating railroads," (Hurd's Stat. chap. 114, par. 87,) provides as follows: "Whenever any railroad corporation shall, by itself or agents, run any train, locomotive engine or car at a greater rate of speed in or through the incorporated limits of any city, town or village than is permitted by any ordinance of such city, town or village, such corporation shall be liable to the person aggrieved for all damages done the person or property by such train, locomotive engine or car; and the same shall be presumed to have been done by the negligence of said corporation or their agents." Here neither the person nor property of the plaintiff was struck by the train, locomotive engine or car, and it is contended that the statute must be so construed that a recovery can in no case be had unless the injury complained of was produced by the locomotive engine or train of the railroad

company coming in actual collision with the person or property of the person injured. No court has ever, so far as we are advised, placed the construction contended for by appellant on the statute.

But it is said, the statute in question should receive the same construction which has been placed upon section 1 of the act relating to fencing and operating railroads. That section provides that railroads shall, within six months after any line is open for use, erect and maintain fences, cattle-guards, etc., and further provides that "when such fences or cattle-guards are not made as aforesaid, or when such fences or cattle-guards are not kept in good repair, such railroad corporations shall be liable for all damages which may be done by the agents, engines or cars of such corporation to such cattle, horses, sheep, hogs or other stock thereon."

The construction of this statute came before this court in *Schertz* v. *Indianapolis, Bloomington and Western Railroad Co.* 107 Ill. 577, and, following the rule adopted in *P. & I. R. R. Co.* v. *Haskett*, 10 Ind. 409, and *Lafferty* v. *Hannibal and St. Joseph Railroad Co.* 44 Mo. 291, where like statutes were involved, it was held that damages could not be recovered where stock was injured on a railroad track unless the injury was caused by an actual collision; that the injury must have been actually done by the agents, engines or cars of the railroad company; that consequential damages resulting from fright to animals, not caused by actual collision, are not embraced in the statute. While we adhere to the rule of law laid down in the case cited, and while it may be conceded that the language in the two statutes is somewhat similar, yet we are not prepared to hold that the construction placed on the statute in relation to fencing railroad tracks should be placed on the statute regulating the speed of railroad trains in cities, villages and incorporated towns. The statute regulating speed of trains and the statute regulating fencing of tracks relate to different subjects and were passed

for different purposes.  The former act was, no doubt,
passed for the protection of the lives of those living in
cities and incorporated towns, or those having business
in such places who were required, in the transaction of
their business on the public streets, to cross over the
railroad tracks, where a high rate of speed would, if ex-
ercised by moving trains, endanger the lives of the citi-
zen.  But the latter act was passed for the purpose of
keeping cattle or other animals from straying upon the
right of way of railroad companies and thus being ex-
posed to injury.  The act does not in any respect seek to
control the conduct of those in charge of moving trains.
The whole scope and purpose of the act are to provide
security to property which may be on the commons or on
farms over which railroads are constructed and operated.
The purpose of the statute regulating the speed of trains
is mainly for the protection of human life.  Where dam-
ages have resulted from the running of trains at a rate
of speed prohibited by ordinance, the statute declares
that the damages shall be presumed to have been done
by the negligence of the railroad company or its agents.
Moreover, the language used in the section of the statute
in question will not admit of the construction contended
for unless the language used is given a different meaning
from that ordinarily given.  Where the train is run at a
greater rate of speed in the incorporated town or city
than is permitted by ordinance, the statute declares that
the railroad company shall be liable for all damages done
the person or property by such train, locomotive engine
or car.  There is nothing here, without resorting to a
forced construction, which limits a recovery to cases of
actual collision.  Nor is there any reason why a recovery
should be confined to cases of that character.  If a rail-
road company should run its trains through a city or in-
corporated town at the rate of fifty miles an hour when
the ordinance prohibited a rate of speed exceeding ten
miles an hour, and a person attempting to cross the track

with a team should receive serious injury, what difference, in principle, is there whether the man was struck by the train and injured or whether his team became frightened, upset the wagon and threw him out, from which he was injured? Here the appellee was not struck by the train, but, through the negligence of the railroad company in running its train at a greater rate of speed than provided by the ordinance of the village, while in the act of crossing the railroad track, his team was frightened and he was thrown out of his wagon and injured, and under a fair construction of the statute we entertain no doubt in regard to his right of recovery.

From what we have said it is seen the court did not err in admitting in evidence the ordinance or in refusing appellant's instruction.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*