# Illinois Central R. R. Co. v. William Klein, a Minor, etc.

1. NEGLIGENCE—*Selecting a Particular Route for Travel.*—Negligence can not be attributed as a matter of law to a pedestrian or driver of a vehicle from the fact that he selects a particular route for travel.

2. RAILROAD COMPANIES—*Rights of Person upon Crossings Existing by Prescription.*—Where a railroad crossing exists by prescription the rights of the company and the public to it as such, are reciprocal; and if a person is injured upon it by the negligence of the railroad company he may legally insist that he was rightfully there, and appeal to the ordinary rules of protection existing between travelers on the highway and the railroad company.

3. SAME—*Failing to Ring a Bell as Required by Ordinance, Proximate Cause of an Injury.*—Where the failure to ring a bell as required by an ordinance is declared upon as the cause of an injury, there can be no recovery under such a declaration, unless the evidence shows that such failure was the efficient cause of the injury.

4. SAME—*Escaping Steam, When Not Due to Negligence.*—Escaping steam is incident to railroading and if its escape is not due to some negligent act, the fright of a horse from it, is not actionable.

5. EXCEPTIONS—*Must be Taken to the Refusal of Instructions.*— Where no exceptions to the ruling of the court in refusing instructions were taken in the trial court, the error, if any, in such refusal, is not available to the party in this court.

·Trespass on the Case.—Appeal from the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFER, Judge, presiding. Heard in this court at the August term, 1900. Reversed and remanded. Opinion filed March 11, 1901.

**Statement.**—This is an action on the case, by appellee against appellant, for injuries sustained by appellee, a minor of the age of fifteen years· at the time of the accident. There was a trial by jury, a verdict for plaintiff for $7,000, a motion by appellant for a new trial, which was overruled, and judgment was rendered on the verdict.

The accident happened the 3d of February, 1900, on the tracks of appellant in the city of Belleville. Main street of that city runs east and west through it; south of that street the east and west thoroughfares are named First street, Second street, etc. Intersecting these at right angles are Illinois street on the east, next and west is Spring street, and west of that is Richland street.

Appellant's tracks are located northwesterly and southeasterly across Seventh, Spring, Sixth and Richland streets, the railroad crossing such streets in the order named, from the south.   At a point about seventy feet east from the east line of Richland street, where the tracks cross Sixth street, and about the middle of the street, is where the accident occurred.   Sixth street east from Richland is not used for a thoroughfare, although it is a regularly laid out street. There is no crossing on Sixth street that can be used by the public.   At Richland street is a crossing for north and south travel.   North of appellant's main railroad track is a side track running from the Richland crossing down to the freight house located on Seventh street.   At the Richland street crossing and also at the place of the accident, these tracks are about twelve feet apart; south of Sixth street they begin to widen rapidly, so that they are from twenty-five to thirty feet apart most of the way toward the freight office.   On this strip of land between the main track and the side track, is a driveway parallel with the tracks, which has been used by the public twenty-five or thirty years in going from Spring street to Richland street, for the reason that there was no crossing at Sixth street.

There were tracks on Seventh street, and below that there were no thoroughfares in the city.   Appellant has kept the driveway in repair for a number of years; crushed stone was put into it the year prior to the accident.   Except where it crosses the streets of the city, this driveway is located entirely on the railroad right of way.

Appellee, William Klein, had an acquaintance named. Schmidt, who was working for the Star Brewery on Main street, about the same age as himself.   On the evening of the accident, Schmidt had to take a small keg of beer from the brewery and deliver it to some people living on Sixth street, west of Richland street and west of appellant's tracks heretofore mentioned. ' The beer was put into a one-horse wagon, and Klein went with his friend for company. Schmidt did the driving; the horse was gentle and used to the cars and the business transacted about a railway.   To

get to their destination, the boys drove west on Main to Illinois street, then turned south on the last named street till they got to Seventh street; here they turned into the yards of appellant and drove northwesterly on the driveway heretofore mentioned, located between the tracks, until they got to Richland street crossing, where they turned south and west into Sixth street and delivered the beer. In returning to the brewery they intended to go back the same way they had come; at the Richland street crossing they would be traveling north, so that a sharp turn was necessary at this point to bring them back on the driveway between the tracks, along which driveway they would be traveling in a southeasterly direction, after making the turn. The night was very dark; the time was about half past six. The boys had crossed the main track in safety, and were proceeding in a southeasterly direction along the driveway between the main track and the side track, when in the darkness they became aware of an approaching train on the main track, moving in the opposite direction.

The train consisted of two box cars and an engine; it was backing toward them. When they first became aware of the train, the front end of the first car was estimated to be fifteen or twenty feet from them. A brakeman, who was stationed on top of the car, seems to have observed them at the same time. Although the boys were clear of the track and the moving train thereon, yet the darkness prevented the brakeman from seeing their exact location, although he had a lantern in his hand. In order to prevent a possible collision, he signaled with his lantern to the engineer, who, in response, gave two blasts of the whistle, and at the same time applied the air brakes. The horse seems to have traveled along without fright until the engineer's whistles and escaping steam caused him to swerve to one side; the wagon was upset and appellee was thrown under the wheels of the second car of the moving train, where his right leg was crushed, necessitating amputation between the knee and the thigh. After the accident the horse was standing still at the place where he had made the abrupt turn. At the

I. C. R. R. Co. v. Klein.

time of the accident there was in force an ordinance of the city limiting the speed of freight trains to six miles an hour. There was also another ordinance in force requiring all moving trains to keep the bell on the engine ringing continuously while inside the city limits.

There are eight counts in the declaration; two or more alleging negligence generally in running the train; negligence in running at a greater rate of speed than six miles an hour; negligence in not ringing the bell; negligence in not keeping a light on the front end of the backing train; negligence in making unnecessary noises by sounding the whistle and letting off steam; general negligence in the management of the train at the time of the injury. The last count charges the injuries to have been caused by the willful, reckless and wanton conduct of the servants of defendant.

On all of these issues except the last one, there was a sharp conflict of evidence, the engineer testifying that there was no steam escaping because he was not working steam at the time, and that the two blasts of the whistle were given in an ordinary way in response to the brakeman's signal for brakes, as required by the rules of the road, and of good railroading, so that the brakeman might know that the engineer had received the stop signal.

There is evidence that the train was being run at the rate of eight to ten miles an hour, in violation of the ordinance; the crew on the train estimated its speed at about five miles an hour. The boys testified that there was no light on the car to apprise them of the approaching train; and on the other hand the trainmen all say there was a brakeman on top of the first car, with a lantern, such as is ordinarily used by brakemen; the engineer and brakeman say that he was up there all of the time after they had started backing toward the Richland street crossing. Appellee's evidence tends to show that the bell was not ringing as the train was being backed west on the track; on the other hand, the trainmen testify that the bell was being rung continuously, and that both boys admitted, after the accident, they had heard the bell and seen the light on top

of the car.   The evidence further shows that the boys were
well acquainted with the streets and railroad grounds; that
they knew there was much switching done in the yards of
appellant; and that a train was likely to be using the tracks
at any time of night or day.   It is also established that
there are three other routes which might have been chosen
by the boys, any one of which would have precluded the
happening of the accident.   Two of these routes lay north
of the tracks and running in the same general direction;·
it is shown, however, that neither of them were ordinarily
used in getting across the railroad, and that they were
inconvenient for travel and to some extent out of repair.
The third route would have been, to have continued north
on Richland street to Main street, and thence east on the
last mentioned street to the brewery.

During the trial the jury viewed the premises where the
accident happened and also the two driveways north of the
tracks.   No instructions were given at the instance of
appellee.

GUSTAVUS A. KOERNER and VICTOR K. KOERNER, attorneys
for appellant; JOHN G. DRENNAN, of counsel.

HAMILL & BORDERS, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.
Under the state of facts as before given, it is first insisted
by appellant that appellee was guilty of contributory neg-
ligence in choosing a route known to be dangerous.   The
driveway is shown to be one of the ordinary ways of get-
ting across appellant's tracks and in good repair; also that
the boys were driving slowly and had full control of a
gentle horse, used to the trains.   All that appellant was
entitled to in this state of the proof was submitted to the
jury in its seventh instruction.   It must be a rare case
which would authorize a court to say, as a matter of law,
that a pedestrian or a driver of a vehicle is guilty of negli-
gence in selecting a particular route for travel.   The City
of Sandwich v. Dolan, 133 Ill. 177, states the law in refer-

ence to this matter, and we find nothing in this record that takes this case out of that rule.

It is insisted that appellee was a mere licensee on the driveway, and therefore he went into it subject to its perils. While it is true that there is no crossing in Sixth street, still appellant had not the exclusive use of that street because it was regularly laid out and dedicated to the public and had never been vacated. See St. L. A. & T. H. R. R. Co. v. Belleville, 122 Ill. 376. But for a better reason it must be held that the duties and obligations of the parties to this case were mutual and reciprocal. This driveway had been used by the public for more than twenty-five years without any objection, and by the act of repairing it appellant gave invitation to its public use. It is not important to determine that this road exists by prescription, as is claimed by appellee, and that appellant can not now close it to public travel. It is important whether the public, by the consent, acquiescence and invitation of appellant, have used this road in such a way that if a person on it is injured by the negligence of the appellant, such person may legally insist that he was rightfully there, and appeal to the ordinary rules of protection existing between travelers on the highway and the railroad company. The evidence in the record is sufficient to answer this query in the affirmative, and there is nothing in the negative. We are of the opinion that the facts in this case fall under the rule in C. & A. R. R. Co. v. O'Neil, 172 Ill. 527; P. & Ft. W. & C. R. R. Co. v. Callaghan, 157 Ill. 406; C., B. & Q. R. R. Co. v. Murowski, 179 Ill. 77; Ill. Cen. R. R. Co. v. Frelka, 110 Ill. 498, and that Ill. Cen. R. R. Co. v. Godfrey, 71 Ill. 500, and same v. Hetherington, 83 Ill. 510, are not in point, and appellee was rightfully at the place where he was injured.

The sole question for determination then is, whether the claimed negligent acts and omissions of appellant, proximately caused the injury and made appellant liable therefor. The substantive acts and omissions relied upon for a recovery are, failure to ring the bell as provided by the ordinance; running at a rate of speed prohibited; negligently

sounding the whistle and letting off steam; failure to have lights at Sixth street and on the roadway; running the train backward without a light on the front end of the first car; willful and wanton conduct of appellant which caused the injury.

Evidence was submitted, in proof and disproof of these issues, and as the jury returned a general verdict, it is impossible to tell upon what issue or issues the verdict is based, since appellee asked no instructions, so as to limit the ground of recovery to any controlling issue or issues. It is necessary to carefully weigh the evidence and determine what portions may prove or disprove the proximate cause of the injury.

While it is true that proximate cause is a question for the jury, it is also true there is an initial question for the court, and that is, does the evidence tend to prove that the claimed negligent act may have produced the result complained of? Appellee was not injured while crossing the railroad track, nor about the time he was preparing to cross, but was traveling along the highway at a sufficient distance from the train so that there could be no direct collision.

On this appeal we shall assume that appellant failed to ring the bell, as required by the ordinance. It may have been negligence not to have done so, but unless such failure was an efficient cause in the act complained of, there can be no recovery. C., B. & Q. R. R. Co. v. Notzki, 66 Ill. 455.

It is true this is a case of statutory signals, and if the bell had been rung appellee might have taken some precaution for safety by turning further from the track; but it is simply conjecture whether he would or not. The tracks are parallel for a considerable distance, and at no place are they far enough apart, so that the ringing of the bell would have notified him whether the train was coming on the main or side track. He knew he was driving a gentle horse; that he was across the main track and had traveled for some distance between the tracks so there could be no direct collision with a moving train on either track. He could not use the Sixth street crossing, because the evidence

tends to prove it was not fitted for travel, so that this means of egress, probably would not have presented itself to him even if he had heard the bell. To have made a turn between the tracks twelve feet apart, might have been more dangerous in the darkness than to keep straight ahead with the horse which he knew was accustomed to the train. To have whipped up his horse to get out on the broader portion of the driveway, might have subjected him to an imputation of negligence, if an injury should ensue under such circumstances. Appellee's own testimony is, that the horse did not swerve until the whistle sounded, although a portion of the front car had already passed the horse, so that probably the cause of the accident was the darkness of the night, and the fact that the whistle sounded suddenly, caused the horse to make an involuntary and abrupt turn, which partially upset the wagon, throwing appellee under the wheels of the moving train.

All probabilities in this record are, that if the bell had been rung appellee would have believed himself safe and would have continued doing just as he was doing when the whistle blew.

This manner of estimating the probabilities has the sanction of the Supreme Court in passing upon the facts which were probably the cause of the killing of an animal. C. & A. R. R. Co. v. Henderson, 66 Ill. 494. We are unable to say that the failure to ring the bell was the cause of the accident.

Much of what has been said applies with equal force to the rate of speed. There is evidence that the train was moving from eight to ten miles an hour, though the train crew testified that it was moving about five miles an hour. Appellee did no act for or against himself by reason of the rate of speed fixed by his witnesses. By no movement perceived in the wagon where he was riding, or in the lines with which the horse was controlled, did the animal show fright by the sudden appearance of the train. In so dark a night this sudden appearance would be the same to the horse, whether the train was moving five or ten miles an hour. The fact

that the horse was found in the same place after the wagon was upset as before, is proof that the irritant cause of the upsetting was the whistle, and when it ceased the fright ended, although the headlight of the engine passed him after the wagon was overturned. To this suggestion appellee replies, " no one can tell what is revolving in a horse's head," which is true; but we must judge from outward manifestations what is the impelling cause of his conduct. The burden of proof is on appellee to show that excessive speed was an efficient contributing cause in the act committed by the horse. Such a case may be found in Illinois Central R. R. Co. v. Crawford, 169 Ill. 554. All the evidence considered, as it appears from this record, we are unable to say that the speed of the train, even if admitted to have been in excess of the ordinance, was the proximate cause of the injury.

It is shown by some of the witnesses, that the two blasts of the whistle were loud and shrill, and at the same time the engine let off steam. The engineer describes the sound to have been " two short toots." The evidence shows that this whistle was sounded in the commendable endeavor to save life and property. The brakeman, unable to see the exact location of appellee, and fearing a collision was imminent, signaled to the engineer to apply the brakes, and this act must be attributed to an error of judgment in an emergency. The brakeman's signal to the engineer was probably interpreted by him to mean that he might strike some person on the track, and the engineer may have thought that in the darkness of the night, a sharp whistle would enable the traveler to get out of the way before the train would strike him. The engineer's position on the engine was on the side away from the boys on the driveway, and he did not know there was no person about to cross the track, or the situation of appellee; he simply obeyed the brakeman who was acting as pilot of the train. If the whistle was unnecessary and unnecessarily loud, such act was done in error of judgment at the time of an apparent emergency, with a desire to save life and property. Such acts have never been held,

so far as we are advised, to be actionable negligence.  Bitner v. Crosstown Street Ry. Co., 153 N. Y. 76; Stabenan v. Atlantic Avenue R. R. Co., 155 N. Y. 511.

To have blown the whistle without reason, and have frightened the horse, whether seen or not, since the driveway was designed for public use, would have been negligence, but the whistle was not blown under such circumstances.

It is a matter of common knowledge that escaping steam is incident to the business of railroading, and if its escape is not due to some negligent act, the fright of a horse from it, is not actionable.  There is no evidence that whatever steam did escape from appellant's engine was not in the necessary and skillful management of the train.

Appellee alleges that appellant negligently failed to furnish lights, either on the roadway or on the cars of the backing train.  So far as the roadway is concerned, the evidence is satisfactory that there were no lights there; and it is conflicting whether there was a light on the train.  But it is admitted, that the engineer gave his whistle in response to the brakeman, who dimly saw the wagon approaching. He must have been on top of the cars; from no other place could he in all probability have seen the approaching wagon. The evidence is that he carried a lantern, and when the boys approached the train, it may have been held in such a way that they did not see the light.  The argument of appellee is, that if there had been a sufficient light either on the car or on the roadway, the brakeman would have seen the location of the wagon; no whistle would have been sounded and the accident would have been averted.

It is probable that the cause of the accident was the error of judgment of the brakeman in causing the whistle to be blown, thereby causing the fright of the horse and the upsetting of the wagon.  If appellee's contention as to lights holds true, then appellant should have maintained lights whether on its train or on the roadway, so as to preclude such errors of judgment on the part of its servants. It may be that the position of the roadway made it incumbent on a person to have foreseen, while in the exercise of

ordinary care, that an accident might reasonably be expected to happen from errors of judgment such as this case discloses. But if that is true, the evidence ought to show such facts, otherwise a person injured may, after the accident, allege the absence of any supposed precaution as negligence, because the manner of the occurrence of the injury usually furnishes a true corrective to any course of past conduct. The duty of appellant was to use ordinary care, not negligently or willfully to expose appellee to danger, which in the exercise of ordinary care it ought to have guarded against.

Appellee had a right to expect that lights and warnings would be used, so as to guard against his being run over when using appellant's track, but to say that appellant was negligent, if it failed to furnish sufficient light to guard against errors of judgment, in case a person is out of harm's way, is going further than any case to which our attention has been called. The case of Baltimore & Potomac R. R. Co., 176 U. S. 232, can not be regarded as controlling; in that case the commissioners of the District of Columbia, pursuant to an act of Congress, had provided that a headlight or other reflecting lantern, should be placed on the advancing end of the train. This was a positive duty, enjoined by law, irrespective of circumstances. The same must be said with reference to the case of the C., B. & Q. R. R. Co. v. Perkins, 125 Ill. 127, where the Supreme Court says that even though a city may not have notified, pursuant to the statute, the railroad company, that a flagman was necessary at a certain crossing, nevertheless it was not error to show that no flagman was at the crossing, because the railroad company was still under obligation to adopt such other precautions as "public safety and common prudence would suggest."

We are unable to say that common prudence ought to have foreseen the cause of this accident, because appellee was neither crossing the track nor preparing to cross it.

In this record there is no evidence authorizing us to say that this accident was caused by the willful or wanton con-

duct of the defendant. Before a court of review should so denominate any conduct, it should be sure it has before it the judgment of a jury on that question.

The Supreme Court of Wisconsin, in a case where seemingly reprehensible conduct of persons was before the court, and the court was asked to make that determination, replied :

"The conduct of the conductor was certainly reprehensible, and in connection with his own explanation of it evinces a cold blooded indifference which I am happy to say is not common among railroad employes. But without a finding by the jury on such an important question of fact, we would not feel warranted in first passing upon it." Duane v. Chicago & Northwestern Ry. Co., 72 Wis. 523.

The proof presented by this record shows that the horse swerved because of the signal made by the whistles and no other cause can be reasonably ascribed. The proof is conclusive on the proposition that it was the erroneous judgment of the brakeman which set the cause of the injury in motion, and that the signal was prompted by a desire to avoid injuring appellee. To attribute a willingness and a wantonness to injure by the same act which is intended to save life and property, is an anomaly that can not exist without some further proof.

If the brakeman had been cognizant of the entire situation, and had caused the signal to be given under circumstances that evinced bad faith, or a total disregard for the rights of others, whether he saw them or not, then a recovery would be warranted on account of willfulness, but this record rebuts such conclusions. The concluding words of the opinion of the Supreme Court in Wabash R. R. Co. v. Speer, 156 Ill. 244, are of much weight in this connection.

The claim is made that it was a combination of circumstances which caused the injury, but this begs the question at issue, because such a combination may neither in itself nor in any of the elements thereof, be a proximate negligent cause, for which appellant is liable. To make appellant liable it must appear that either the entire combination was the result of some negligent act or omission on its part, which brought about the combination, or that some

one or more elements of the combination was the proximate cause of the injury. In the eight counts of the declaration there are some charges of negligence that the evidence not only utterly fails to sustain, but seems to preclude the liability of appellant on such grounds. There are other charges of negligence that the record before us leaves in such condition that we are unable to say whether appellee has a cause of action or not against appellant, because the record before us does not preclude the idea that there may be a cause of action although not proven.' It is for that reason that, in addition to reversing the judgment, we remand the cause, leaving appellee to make it plain if he can, on another trial, what claimed charge or charges of negligence was a proximate cause of his injury. Charges of negligence not supported by proof to have been a proximate cause of the injury, though proper as evidence of surrounding circumstances, should not be submitted to the jury as substantive ground of liability. Such charges, for instance, we regard in the present state of the record to be the charges that appellant negligently failed to furnish the lights, and that it negligently sounded the whistle; if on another trial no evidence should be introduced other than this record contains, the court ought not to submit to the jury the question of absence of lights or the sounding of the whistle as distinct grounds of negligence, even though the evidence of the absence of lights or the sounding of the whistle, may be properly shown as part of the surrounding circumstances.

It follows from what has been said, that the court erred in refusing several of appellant's instructions, especially Nos. 21 and 22; but no exception to the ruling of the court seems to have been taken, as none appears in the abstract, therefore the error is not available to appellant.

We are not satisfied that the verdict of the jury is right, hence we are of the opinion that the court erred in overruling appellant's motion for a new trial.

The judgment is reversed and the cause is remanded, that a new trial may be had.

CREIGHTON, P. J.: I consent to the order reversing and remanding this case, but I can not concur in the mode of treating the case adopted by the writer of the opinion, nor in the argument of the opinion.

WORTHINGTON, JUSTICE: I concur in reversing and re-manding the case, but do not concur in the opinion so far as it holds that, if no single act of negligence on the part of the defendant is the proximate cause of the injury, there can be no recovery. Reversed and remanded.